664 A.2d 1342

**Mary FINN, Appellant,**

v.

**CITY OF PHILADELPHIA, Appellee.**

Supreme Court of Pennsylvania.

Argued April 25, 1995.

Decided Sept. 22, 1995.

598

Jonathan Wheeler, Robert T. Horst, Philadelphia, for Mary Finn.

Richard Stanko, Michael Paul, Media, for amicus.

Alan C. Ostrow, Philadelphia, for City of Phila.

Suzanne McDonough, Philadelphia, for Sch. Dist.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, Mary Finn, was awarded a judgment in the amount of $203,500 against appellee, City of Philadelphia, after appellant was injured when she fell on a grease-covered city sidewalk. The Commonwealth Court reversed the judgment due to governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564, holding that the "sidewalk exception," 42 Pa.C.S. § 8542(b)(7), did not pierce the city's immunity in this case. We granted allocatur to clarify precedents of this court relating to immunity, and to construe the language of the sidewalk exception to governmental immunity.

This case arises from the following background. After dark on the evening of December 24, 1987, appellant was walking on the sidewalk adjacent to city-owned property on Vine

Street in Philadelphia, when she slipped on an accumulation of grease. Her fall caused serious injury, and she brought a personal injury action against the city. The city raised the defense of governmental immunity under the tort claims act, moving for summary judgment, which was denied, and the case was tried on stipulated facts. Judgment was entered for appellant in the stipulated amount of $203,500.

On appeal, the Commonwealth Court reversed, holding that an accumulation of grease on a sidewalk is not "a dangerous condition of sidewalks," 42 Pa.C.S. § 8542(b)(7), the statutory requisite to circumventing the city's governmental immunity and permitting tort liability.

The gist of appellant's argument is that the greasy condition of the sidewalk which caused her injury is embraced within the statutory exception to the governmental immunity created by the Political Subdivision Tort Claims Act; she argues that in the language of the act, the grease constituted a dangerous condition of the sidewalk. It would be erroneous, in this view, to focus on the word "of," in contradistinction to the word "on"; rather, the emphasis should be on "dangerous condition" and an analysis of what the legislature meant by that term. She relies heavily on *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992).

Appellee's argument emphasizes the principle that exceptions to governmental immunity must be strictly construed. The city stresses this court's holding in *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), to the effect that claims involving government property must establish an artificial condition or defect of the property itself, and that an actionable dangerous condition of government property must derive, originate from, or have as its source the property in question and may not arise from a source outside the property. The city argues that because grease does not derive or originate from the sidewalk, it is not a defect of the sidewalk itself; therefore, as a matter of law, grease cannot be considered a dangerous condition of the sidewalk. Hence it does not satisfy the statutory sidewalk exception to the doctrine of governmen-

tal immunity and the Commonwealth Court was correct in reversing the judgment against the city.

It is evident that this case turns on the meaning of the sidewalk exception to the tort claims act. 42 Pa.C.S. § 8542(b)(7) states:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(7) *Sidewalks.*—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

To apply this language to this case, we think it helpful to review the precedents which guide our decision.

In *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), and *Snyder v. Harmon, supra,* at 424, 562 A.2d 307, we reviewed the origin of the legislation and the principles governing its interpretation. *Mascaro* provides the following history: In response to our abrogation of the judicially-created doctrine of governmental immunity in *Ayala v. Philadelphia Bd. of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), the legislature enacted the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564. The act legislatively raises the shield of governmental immunity against any damages on account of personal injury or property damage caused by any act of a local agency or employee thereof, except as

otherwise provided in 42 Pa.C.S. § 8542. *Mascaro,* 514 Pa. at 355, 523 A.2d at 1123. *Snyder* provides a strikingly similar history pertaining to sovereign immunity. In *Mayle v. Pennsylvania Dep't of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), we abrogated the doctrine of sovereign immunity. In response, the legislature enacted the Sovereign Immunity Act, 42 Pa.C.S. § 8521 *et seq.* The act reinstated the doctrine of sovereign immunity, limiting the instances in which an individual may sue the Commonwealth to a set of specific situations enumerated in 42 Pa.C.S. § 8522. *Snyder,* 522 Pa. at 431, 562 A.2d at 310–11.

Because the legislature's intent was to provide immunities, we have held that the exceptions to immunity must be strictly construed. *Id.* at 433, 434, 562 A.2d at 311, 312; *Mascaro,* 514 Pa. at 361, 523 A.2d at 1123; *Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 506, 645 A.2d 184, 185–86 (1994). Moreover, this court has held that the two statutes dealing with governmental and sovereign immunities, viz., the Political Subdivision Tort Claims Act and the Sovereign Immunity Act, are to be interpreted consistently, as they deal with indistinguishable subject matter. *Id.* at 507, 645 A.2d at 186; *Crowell v. City of Philadelphia,* 531 Pa. 400, 410 n. 8, 613 A.2d 1178, 1182 n. 8 (1992); *Snyder,* 522 Pa. at 435 n. 7, 562 A.2d at 312 n. 7.

Within those very general guidelines, this court has decided cases involving the real estate and sidewalk exceptions which provide more specific guidance for the question presented in this case, that is, whether an accumulation of grease on a sidewalk is a dangerous condition of the sidewalk. In *Snyder v. Harmon, supra,* at 424, 562 A.2d 307, we construed the words "[a] dangerous condition of Commonwealth agency real estate" as follows: "These key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Snyder,* 522 Pa. at 433, 562 A.2d at 311. "[T]here must be negligence which makes the real property itself unsafe for activities for which it is used." *Id.* at 434, 562 A.2d at 312. *Mascaro, supra,* at 351, 523 A.2d 1118, reiterated this rule: "We ... hold that the real estate exception can be applied only to those cases where it is alleged

that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." 514 Pa. at 363, 523 A.2d at 1124 (emphasis in original). And again, "We have consistently maintained our view that the focus of the negligent act involving a use of government owned or controlled land (including streets and sidewalks) must be the actual defect of the land itself and that the rule of immunity can be waived only in those cases where it is alleged that the artificial condition or defect of the land itself causes the injury." *Kiley by Kiley, supra,* 537 Pa. at 508, 645 A.2d at 187.

■ This interpretation is supported by the context of the "dangerous condition of sidewalks" requirement. The next sentence in the statute sheds light on what the legislature meant by "dangerous condition of sidewalks." In distinguishing situations creating either primary or secondary liability of a governmental agency, the negligence of the agency relates to "installation and repair of sidewalks." Installation and repair refer to the physical condition of the sidewalks themselves; by contrast, objects and substances upon sidewalks are not part of the physical condition of the sidewalks themselves. The language used in this section of the statute thus affords no basis to assert that foreign matter on sidewalks might result in governmental liability.

This much-litigated legislation has spawned other opinions which are less closely related to the present case but have nevertheless been cited. Appellant argues that *Bendas v. Township of White Deer, supra,* at 531 Pa. 180, 611 A.2d 1184, would permit the city to be held liable in tort. Moreover, the Commonwealth Court noted apparent inconsistency between *Bendas* and *Mascaro, supra,* at 514 Pa. 351, 523 A.2d 1118 and *Snyder, supra,* at 522 Pa. 424, 562 A.2d 307. We therefore review those decisions to clarify their holdings and their application to this case.

In *Bendas,* the court considered two issues: the first was "whether the Department [of Transportation] has a duty to make its highways safe for their intended purpose;" the second was "whether the failure of the Department to exercise

that duty is actionable under an exception to the Sovereign Immunity Act." 531 Pa. at 183, 611 A.2d at 1186. We cited *Snyder, supra,* in deciding that the Commonwealth agency had a clear duty to make its property safe for the activities for which it is regularly used. *Id.* The court found the second question more difficult, since a Commonwealth agency might breach a duty "yet not be liable unless the breach is coincidental with an exception to the Act." *Id.* The exception applicable in *Bendas* was that of 42 Pa.C.S. § 8522(b)(4) which permits liability for a "dangerous condition of ... real estate and sidewalks ... and highways...." We held that when the Commonwealth agency or subdivision has a legal duty, the question of what is a dangerous condition is one of fact which must be answered by the jury, noting that a court is not precluded from entering judgment for the Commonwealth agency or subdivision when the facts establish as a matter of law that a dangerous condition did not exist. *Id.* at 185 n. 6, 611 A.2d at 1187 n. 6.

*Mascaro* involved a detainee at the defendant youth detention center who had a history of violent criminal assaults, then escaped and terrorized the Mascaro family, with tragic results. The Mascaros sued the political subdivision under the real estate exception to the governmental immunity act, 42 Pa.C.S. § 8542(b)(3), alleging negligent maintenance of the detention center which permitted the detainee to escape. The court held that the real estate exception "can be applied only to those cases where it is alleged that the artificial defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." 514 Pa. at 363, 523 A.2d at 1124. Thus, *Mascaro* is an example of a situation in which the political subdivision was not liable as a matter of law because the dangerous condition of the real estate itself did not cause the injury.

*Snyder* was a case in which travellers' falls from the berm of a Commonwealth highway into a mine resulted in injuries and death, allegedly due to the Commonwealth agency's negligent failure to maintain a safe roadway and to provide ade-

quate notice of a dangerous condition; the plaintiffs relied on the real estate exception to the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4). The court held that the statutory language unambiguously required that "a dangerous condition must derive, originate from or have as its source the Commonwealth realty," 522 Pa. at 433, 562 A.2d at 311; that "there must be negligence which makes the real property itself unsafe for activities for which it is used," *id.* at 434, 562 A.2d at 312; and that the real estate exception to the rule of immunity applies only when "it is alleged that the artificial condition or defect of the land itself causes an injury to occur," *id.* at 434–35, 562 A.2d at 312.

In *Ambacher v. Penrose,* 92 Pa.Cmwlth. 401, 403–04, 499 A.2d 716, 717 (1985), and *Ziccardi v. School District of Philadelphia,* 91 Pa.Cmwlth. 595, 599, 498 A.2d 452, 454 (1985), the Commonwealth Court correctly applied this rule in determining that neither a wire fence which fell on a sidewalk nor a criminal assault on a city sidewalk was a dangerous condition "of the sidewalk." Recent decisions of the Commonwealth Court indicate that that tribunal now consistently applies the rule in this way. In *DeLuca v. School District of Philadelphia,* 654 A.2d 29 (Pa.Cmwlth.1994), the court reviewed the claim of a student injured in a fall on a school sidewalk. The fall was caused by milk which had seeped from a trash bag placed next to the sidewalk by school employees and then frozen. The court held: "Because milk that has leaked onto a concrete pavement does not constitute a defect of the pavement itself, ... the School District was not liable under [42 Pa.C.S. §] 8542(b)(3) for the DeLucas' injuries." *Id.* at ——, 654 A.2d at 31. In *Shedrick v. William Penn School District,* 654 A.2d 163 (Pa.Cmwlth.1995), the court reviewed a similar claim by a person injured when she fell in a high school where rainwater tracked indoors had caused the terrazzo floors to become slippery. She fell on a portion of the building's floor not covered by mats although the custodian had mopped and laid mats in an attempt to keep the floors dry. The Commonwealth Court affirmed the trial court because the "rainwater on the floor of the high school neither derived nor originated

from the School District's real property, and no evidence was offered to establish that the floor itself was defective." *Id.* at ——, 654 A.2d at 165.

■ The common theme of all these cases is that liability depends, first, on the legal determination that an injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous.

■ What is necessary, therefore, to pierce the Commonwealth agency's immunity is proof of a defect of the sidewalk itself. Such proof might include an improperly designed sidewalk, an improperly constructed sidewalk, or a badly maintained, deteriorating, crumbling sidewalk. Here, however, we have no such allegation or proof. We have a perfectly designed and constructed sidewalk, undamaged, upon which an unidentified individual or individuals deposited a foreign substance which caused appellant's injury. In the terms of *Snyder, supra,* at 522 Pa. 424, 562 A.2d 307, the dangerous condition did not derive, originate from or have as its source the sidewalk. In the language of the statutory exception to governmental immunity, the dangerous condition was on the sidewalk, not of the sidewalk, and thus is insufficient to create liability in the city.

We hold, therefore, that the Commonwealth Court correctly interpreted and applied the statute of governmental immunity, and thus affirm the judgment of the court.

Judgment affirmed.

ZAPPALA and CAPPY, JJ., file a dissenting opinion.

MONTEMURO, J., is sitting by designation.

CAPPY, Justice, dissenting.

I respectfully dissent.

On December 24, 1987 Mary Finn slipped and seriously injured herself on a sidewalk owned and maintained by the City of Philadelphia ("City"). This sidewalk, located in the

606

rear of the Philadelphia Juvenile Courthouse, was covered with grease as a result of the City's regularly and improperly permitting individuals to park motor vehicles on the sidewalk. In my opinion, the trial court reasonably found that City personnel at the courthouse knew or should have known of this dangerous condition, which they had sought to eliminate by covering a portion of the sidewalk with a rug. Under these circumstances, the trial court also reasonably found that Ms. Finn's injuries resulted from a **"dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency."** 42 Pa.C.S. 8542(b)(7).

Nevertheless, the Majority herein concludes that the City is immune from liability for Ms. Finn's injuries, because it believes that the dangerous condition of the sidewalk found to exist by the trial court does not fall within the "sidewalks" exception to the immunity afforded the City through the *Political Subdivision Tort Claims Act,* 42 Pa.C.S. § 8542 *et seq.*. In reaching this conclusion, the Majority resorts to adoption of a hollow distinction—that the unsafe condition of the sidewalk herein was not "of" the sidewalk, but simply "on" the sidewalk, because the sidewalk was "perfectly designed and constructed and undamaged." Maj. Op. at p. 605. The Majority reasons that the Legislature intended to retain liability only in situations involving circumstances such as "an improperly designed sidewalk, an improperly constructed sidewalk, or a badly maintained, deteriorating, crumbling sidewalk." *Id.* In my opinion, this proposition is not supported by a plain reading of the "sidewalks" exception, and the obvious intention of the Legislature to generally retain governmental liability in situations involving injuries suffered by individuals while using governmental real property, including sidewalks, where the real property constitutes a dangerous condition of which the political subdivision possesses actual or constructive notice.

The "sidewalk exception," 42 Pa.C.S. § 8542(b)(7),[1] quite simply provides that political subdivisions such as the City

1.

Sidewalks.—A dangerous condition of *sidewalks within the rights-of-way of streets owned by the local agency,* except that the claimant to

herein may be subject to liability for a "dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency." In my opinion, the *only* limitation on the application thereof stems from the Legislature's requirements that the dangerous condition result in reasonably foreseeable injury and that the City have, or be reasonably charged with, notice of the dangerous condition. Thus, I see the Majority's attempt to further limit the applicability of this exception to be erroneous.

The Majority believes that sufficient support for this proposition exists by virtue of this Court's decision in *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989) wherein it was stated that sovereign immunity is waived only "where it is alleged that the artificial condition or defect of the land *itself* causes an injury to occur." *Id.* at 435, 562 A.2d at 312. However, the facts of *Snyder* are clearly distinguishable from this case, as *Snyder* involved injuries sustained on real property that was not owned by the Commonwealth, and accordingly cannot be relied upon for the proposition espoused by the majority. Clearly, since in *Snyder* the plaintiff was not injured on Commonwealth property, the expansive reading given to the above-quoted statement by the Majority is without foundation. For the same reasons, the Majority's reliance upon *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987) is misplaced, where the injuries inflicted by an escaped prisoner did not occur on Commonwealth realty, and

recover must establish that the dangerous condition ***created a reasonably foreseeable risk of the kind of injury which was incurred*** and that the ***local agency had actual notice or could reasonably be charged with notice under the circumstances*** of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

42 Pa.C.S. § 8542(b)(7) (emphasis added).

were vastly removed from the dangerous condition that fostered the prisoner's escape.

Pursuant to *Snyder* and *Mascaro,* and their progeny, the focus is more properly directed away from result-oriented analysis of what constitutes the sidewalk "itself" in favor of a determination of whether the City's "sidewalk was safe for the activities for which the property is regularly used, intended to be used or reasonably foreseen to be used." *Snyder,* 522 Pa. at 435, 562 A.2d at 312; *Bendas v. Township of White Deer,* 531 Pa. 180, 183, 611 A.2d 1184, 1186 (1992). By enacting the sidewalks exception, the Legislature intended to require political subdivisions to design, construct and maintain their sidewalks in a safe condition. Clearly, the Legislature could not have intended to hold the City to such a duty with regard to its sidewalks without intending it to be liable for injuries resulting from a breach of such duty. Once again, all that is required for the exception to apply is a dangerous condition of the sidewalk of which the City possessed actual or constructive notice, and I conclude that few citizens of this Commonwealth would agree that grease on a sidewalk does not, *and can never,* constitute a dangerous condition of the sidewalk.

This proposition is further borne out by the Majority's conclusion that piercing the Commonwealth agency's immunity is warranted only upon proof of things such as the existence of an "improperly designed sidewalk, and improperly constructed sidewalk, or a badly maintained, deteriorating, crumbling sidewalk." Maj. Op. at p. 605. Obviously, as a practical matter, a sidewalk cannot act in a negligent manner. Rather, it is conduct attributable to the political subdivision that is being subject to scrutiny.

Unquestionably, the City's potential liability for a badly deteriorating sidewalk would arise from the negligence of the City in failing to maintain the sidewalk. Similarly, the City's potential liability for a sidewalk that is dangerous by virtue of defective design or construction would result from the negligence of the individuals who created the defective design or performed the defective construction for the City. Given this, I cannot comprehend how the Majority can logically conclude

that the negligence of the City in depositing the grease and/or in failing to correct the dangerous condition it knew about somehow compels a different result.

The dangerous repercussions of the Majority's interpretation of the sidewalk exception are already being felt throughout the Commonwealth. During the pendency of this particular appeal the Commonwealth Court rendered a decision in the case of *McRae v. School District of Philadelphia*, 660 A.2d 209 (Pa.Cmwlth.1995). The Plaintiff in that case slipped and fell on hills and ridges of ice remaining on the improperly maintained sidewalk abutting the McMichael School in Philadelphia. The trial court entered judgment on the pleadings for the school district and the Commonwealth Court affirmed. The Commonwealth Court, relying upon its earlier opinion in *Finn*, (now being affirmed by the Majority) determined that snow and ice are not defects emanating from the real estate itself; therefore liability does not attach. The impact of this absurd conclusion that the defect must emanate from the sidewalk itself is glaringly obvious when taken to such an absurd extreme as was done by the *McRae* decision. Do we really want to send a message to our school districts that they no longer need to carefully remove the snow and ice from their sidewalks?

I cannot comprehend how the Majority can justify its decision, in light of such absurd results, to afford immunity in situations of active negligence, such as where the City itself deposits the grease, where the same would not be true in circumstances involving passive negligence, such as where the City simply permits a sidewalk to crumble.

Because this particular sidewalk *"itself,"* was, as reasonably found by the trier of fact, rendered dangerous by the presence of the grease thereon, I respectfully but emphatically dissent.[2]

2. I note that in *Kiley v. City of Philadelphia*, 537 Pa. 502, 645 A.2d 184 (1994), I similarly disagreed with the manner in which the Majority therein chose to expand the immunity of the City of Philadelphia in connection with the maintenance of its sidewalks. While my dissent in *Kiley* addressed numerous other shortcomings contained in the majority opinion therein, I believe the simple facts of the matter *sub judice*

610

ZAPPALA, Justice, dissenting.

With the exception of footnote 2 and the reference therein to *Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994), a case in which I joined the majority and which I believe is distinguishable from the present case, I join in Justice Cappy's Dissenting Opinion.

I also note that the majority's interpretation of this language is apparently at odds with the understanding expressed in the May 1978 Report of the Joint State Government Commission Task Force on Sovereign Immunity, proposing the legislation which, after revision not relevant in this context, became 42 Pa.C.S. § 8501 et seq. The Report's discussion of the waiver of sovereign immunity[1] in the area of liability related to "Commonwealth Real Estate, Highways and Sidewalks" states, "this area of waiver is intended to impose liability as it would exist if the owner or lessee were a private person." *Id.* at 13.

Because I find the majority's interpretation to be strained, illogical, contrary to the intention of the General Assembly, and apt to foster absurd results, I respectfully dissent. I would reverse the Order of the Commonwealth Court.

sufficiently expose the frailty of the majority's approach to these situations.

1. As the majority notes, we have held "that the two statutes dealing with governmental and sovereign immunities, viz., the Political Subdivision Tort Claims Act and the Sovereign Immunity Act, are to be interpreted consistently, as they deal with indistinguishable subject matter." Maj. Opinion at 601, citing *Kiley,* 537 Pa. at 507, 645 A.2d at 186; *Crowell v. City of Philadelphia,* 531 Pa. 400, 410 n. 8, 613 A.2d 1178, 1182 n. 8; and *Snyder v. Harmon,* 522 Pa. 424, 435 n. 7, 562 A.2d 307, 312 n. 7.