## Esbensen v. SEPTA

*Joseph D. Shein,* for plaintiffs.
*Lisa B. Flickstein,* for defendants.

DiNUBILE, *J.,* June 10, 1996—This opinion arises from a grant of summary judgment in favor of the defendants, SEPTA and Cornell & Co. Inc., against the plaintiffs in these two consolidated lead paint cases. Summary judgment is granted in favor of SEPTA for two reasons. First, there exists sovereign immunity. Secondly, even if sovereign immunity did not bar this action, there can be no liability based on the theory of peculiar risk or special danger because the work performed by the plaintiffs did not pose a risk or danger different from that normally associated with the work of lead paint removal. The grant of summary judgment in favor of Cornell is predicated on the grounds that it was the plaintiffs' statutory employer and is therefore immune from suit under the Pennsylvania Workers' Compensation Act.

The basic undisputed facts which have been established through affidavits, depositions and various supporting documents are as follows. The plaintiffs, Esbensen and Rawlings, instituted these suits against the defendants for personal injuries allegedly sustained from lead poisoning arising from the abrasive blasting of lead paint from SEPTA bridges in the course of SEPTA's Frankford Elevated reconstruction project. Their wives brought concomitant actions for loss of consortium. The plaintiffs were employed by Coastal Steel Construction Co. Inc., a subcontractor retained by the general contractor, defendant Cornell, to remove lead paint from and paint the bridges as well as to perform miscellaneous structural steel work. Plaintiffs stated in their depositions

they were specifically trained and certified by their union as knowledgeable and competent in the removal of lead-based paint. The general contract for reconstruction of the Frankford Elevated was awarded to Cornell. Under the terms of this contract, among other things, Cornell was to clean and paint existing steel after removing all lead-based paint. This general contract, the subcontract between Cornell and plaintiffs' employer, and all specifications pertaining to both are part of this record. (See specifications entitled "Frankford Elevated reconstruction project," *Part 3—Execution B7* entitled *Existing Steel,* pages 9A-7—9A-8. See also, B7(c), page 9A-8.)

As stated, plaintiffs alleged lead poisoning arising from the abrasive blasting of lead paint from the bridges involved in SEPTA's Frankford Elevated project. Suit was commenced by them against both defendants under the following theories of liability. The negligence theory against SEPTA is twofold: (1) SEPTA, owner of the bridges and employer of the independent contractor which hired plaintiffs, is liable for failure to warn and take adequate precautions as the work of lead paint removal constituted a peculiar risk or special danger under Restatement (Second) of Torts, §§416 and 427; or, in the alternative, (2) SEPTA had on-site supervisors who observed the so-called dangerous work and took no precautions to protect plaintiffs or advise them of a safe manner for removing the lead paint. Plaintiffs' theory as to Cornell is based on failure to warn and/or take adequate precautions to protect them during the abrasive blasting process.

Plaintiffs' claims against SEPTA are barred under the doctrine of sovereign immunity as their allegations of negligence do not come within any of the exceptions to the Sovereign Immunities Act, 42 Pa.C.S. §8522;

388

more particularly, the real estate, highway and sidewalk exceptions, section 8522(b)(4). The "real estate exception" provides, in pertinent part, that the defense of sovereign immunity will be waived where a plaintiff's damages are caused by "[a] dangerous condition of Commonwealth agency real estate and sidewalks ...."[1] [I]t is well established ... exceptions to the rule of absolute governmental immunity 'must be narrowly interpreted' ...." *Lory v. City of Philadelphia*, 544 Pa. 38, 43, 674 A.2d 673, 675 (1996).

In *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), the Supreme Court held the real property exception to governmental immunity was inapplicable where a plaintiff slipped on grease covering a municipal sidewalk. The court quoted *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), for its interpretation of the phrase "dangerous condition of Commonwealth agency real estate":

"These key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty. *Snyder*, 522 Pa. at 433, 562 A.2d at 311. [T]here must be negligence which makes the real property itself unsafe for activities for which it is used. *Id.* at 434, 562 A.2d at 312." *Finn, supra* at 601, 664 A.2d at 1344-45.

The *Finn* court went on to quote *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987):

"[T]he real estate exception can be applied only to those cases where it is alleged that the artificial condition

---

1. The real estate exception which provides sovereign immunity to Commonwealth parties, 42 Pa.C.S. §8522(b)(4), is interpreted in pari materia with the real property and sidewalk exceptions, 42 Pa.C.S. §8542(b)(3) and §8542(b)(7), respectively, which provide governmental immunity to municipal parties.

or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability. [Mascaro] at 363, 523 A.2d at 1124." *Finn, supra* at 601-602, 664 A.2d at 1345. (emphasis in original)

It is clear from a reading of *Finn* that the alleged facts upon which plaintiffs' theory of recovery is based do not come within any exception to sovereign immunity. The alleged dangerous condition, namely, the lead paint coating the SEPTA bridges, did not make the bridges themselves unsafe for their intended use. Plaintiffs' alleged injuries occurred only after the abrasive blasting was commenced and the lead paint dust emitted. In addition, the lead paint coating the bridges did not itself cause plaintiffs' injuries. It merely facilitated the injury which was brought about by the acts and/or failure to act of others, namely, the general contractor Cornell and/or plaintiffs' employer, Coastal. The lead paint became dangerous only as a result of the abrasive blasting process, and the alleged harm to plaintiffs arose only during or after this process. Consequently, the allegations of negligence against SEPTA in this case do not fall within the real estate exception to sovereign immunity. See *Rothermel v. PennDOT,* 672 A.2d 837 (Pa. Commw. 1996).

*Thomas v. City of Philadelphia,* 668 A.2d 292 (Pa. Commw. 1995) supports the court's decision in the instant case. The facts in *Thomas* are similar to those presented here: Plaintiff brought suit against PECO, the City of Philadelphia, and the general contractor; the latter was absolved from liability as a result of a statutory employer defense. Plaintiff's decedent was electrocuted as he worked on a scaffold, stuccoing a wall adjacent to a vacant lot which the city had owned and previously demolished. Plaintiff, in the complaint,

alleged that PECO was negligent in failing to insulate, remove, deenergize, barricade or bury the power lines. Plaintiff further asserted the city was liable as an employer of an independent contractor under the theory of peculiar risk or special danger. The court, without deciding whether the work performed posed a peculiar risk or special danger, absolved the city from liability on sovereign immunity grounds. In reaching this decision, the court stated:

"The real property exception applies only to those cases where acts of the local agency or its employees make the property unsafe for the activities for which it is regularly used, for which it is intended to be used or for which it may reasonably be foreseen to be used. . . . Any harm caused by acts of third parties are outside section 8541's scope of liability and, thus, may not be imputed to the local agency or its employees." *Thomas, supra* at 297.

Plaintiffs' claim against SEPTA must be dismissed based on the *Thomas* case alone.

Even if SEPTA was not immune from suit, plaintiffs' claims based on the theory of peculiar risk or special danger must fail. This theory is predicated on an exception to the general rule of law that an employer of an independent contractor is not liable for physical harm caused to another by the contractor's acts or omissions: the employer may be liable for the independent contractor's negligence where the work to be performed by that contractor involves a special danger or peculiar risk. *Steiner v. Bell of Pennsylvania,* 426 Pa. Super. 84, 626 A.2d 584 (1993). A peculiar risk or special danger is said to exist if the danger encountered is different than that normally associated with the general type of work being done. *Peffer v. Penn 21 Associates,* 406 Pa. Super. 460, 594 A.2d 711 (1991). It must involve

a risk that is substantially out of the ordinary at the work site. *Lorah v. Luppold Roofing Co. Inc.,* 424 Pa. Super. 439, 622 A.2d 1383 (1993). In the instant case, plaintiffs' abrasive blasting of lead paint, although dangerous, did not pose any risk which was out of the ordinary. This work and the means of performing it was bargained for in the general contract and in the subcontract between Cornell and plaintiffs' employer. Plaintiffs' employer was hired for the very purpose of removing lead paint from SEPTA bridges. The plaintiffs themselves were certified as having expertise in its removal. How then can it be argued that this work was unusual and beyond the contemplation of the parties involved? See *e.g., Steiner v. Bell of Pennsylvania, supra.*

Cornell, in its brief, argues it is plaintiffs' statutory employer and therefore immune from liability for negligence under the Pennsylvania Workers' Compensation Act, 77 P.S. §52. This argument must be sustained. The seminal case of *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 153 A. 424 (1930), sets forth five elements essential to create the relationship of statutory employer. It is beyond dispute that four of these criteria have been met: (1) Cornell was under contract with the owner SEPTA to perform the work involved in the Frankford Elevated reconstruction project; (2) Cornell, in turn, subcontracted with the plaintiffs' employer, Coastal, to perform some of the work Cornell was obligated to do under its contract with SEPTA; (3) plaintiffs were the employees of the subcontractor; and (4) plaintiffs were injured while performing duties pursuant to the subcontract. The only issue in dispute involves whether Cornell either occupied or was in control of the work site, the fifth element required by *McDonald, supra.* See also, *Donaldson v. PennDOT,* 141 Pa. Commw. 474, 596 A.2d 269 (1991). To meet this fifth criteria,

it is only necessary that the contractor *either* controlled the work site *or* occupied it. *Zizza v. Dresher Mechanical Contractors Inc.,* 358 Pa. Super. 600, 518 A.2d 302 (1986). See also, *Dougherty v. Conduit & Foundation Corp.,* 449 Pa. Super. 405, 674 A.2d 262 (1996). It is undisputed that the job site was occupied by Cornell as the work was being performed in fulfillment of its contract with SEPTA; this occupancy is demonstrated by the fact Cornell established an on-site field office with six full-time employees to supervise and administer the SEPTA project for its duration. See affidavit of Kevin Ducey, project manager for Cornell. Plaintiffs argue that they performed their work at night when Cornell had no supervisors present. Even assuming *arguendo* Cornell did not control the work site at night, this fact does not affect Cornell's status as plaintiffs' statutory employer. All that is required, under case law, is that Cornell occupy or control the work site. Thus, the evidence before this court demonstrates Cornell had a statutory employer relationship with plaintiffs. Summary judgment is proper as plaintiffs' action against Cornell is barred by the Workers' Compensation Act.