## O'Neill v. Commonwealth

*Thomas Yorko,* for plaintiff.
*Gerhard Schwaibold,* for Commonwealth.

KURTZ, *J.,* September 16, 1996—On December 4, 1990, Robert O'Neill, an inmate at the State Correctional Institution at Smithfield, Huntingdon County, Pennsylvania, fell on a walkway leading from the cellblock where he was housed to the mess hall. He was injured and initiated suit on November 30, 1992, by filing a praecipe for writ of summons. A complaint was docketed on January 21, 1993, and in that epistle, Mr. O'Neill, then proceeding pro se,[1] made the following factual assertions:

"(1) For that, on or about December 4, 1990, at approximately 6:30 a.m., the plaintiff, Robert O'Neill, was an inmate under the custody, supervision, control and care of the Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institute (sic) at Smithfield being housed in F-Block of said Institution.

"(2) The Department of Corrections directs and controls and is responsible for inmate movement, routes of direction to and from all structures contained within said Institution.

"(3) On or about December 4, 1990, the Department of Corrections was responsible for the care and maintenance, this including and being not limited to snow and ice removal upon walkways of said Institution.

---

1. The praecipe for a writ of summons was filed on behalf of Mr. O'Neill by Richard A. Estacio, Esquire, of the firm of Hepford, Swartz & Morgan, Harrisburg, Pennsylvania. That office did not prepare or file the complaint. By order dated March 1, 1993, we granted a petition to withdraw filed by Hepford, Swartz & Morgan. On an unknown date subsequent to March 1, 1993, but before December 30, 1993, petitioner's present counsel became involved in this litigation although an entry of appearance has never been filed.

"(4) On or about December 4, 1990, at approximately 6:30 a.m., the Department of Corrections negligently, recklessly and carelessly directed inmate movement from F-Block of said Institution upon the walkway leading from F-Block, said walkway having ice upon it with approximately one inch of snow cover concealing ice.

"(5) The plaintiff, being under the custody, supervision, control and care of the Department of Corrections was caused to be upon said walkway, by the Department of Corrections, and as a result thereof was caused to slip, trip and fall upon said walkway.

"(6) The Department of Corrections was reckless, careless and negligent by knowingly directing inmate movement upon an improperly maintained surface covered with ice and snow.

"(7) That as a result of the Department of Corrections knowingly, with reckless, careless and negligent disregard, directing inmate movement upon said walkway caused the plaintiff to slip, trip and fall upon said walkway, sustaining serious and perhaps permanent injuries about his head, back, body and limbs.

"(8) That the Department of Corrections was reckless, careless and negligent in its failure to conduct proper maintenance of said walkway so as to avoid injury to inmates traveling upon said walkway of said Institution.

"(9) That as a result of said slip, trip and fall, resulting from the reckless, careless and negligent actions of the Department of Corrections, the plaintiff was caused to undergo extensive medical treatment for the care of his said injuries."

The second count of the complaint detailed Mr. O'Neill's conclusion that subsequent to his fall he re-

ceived substandard medical treatment from a host of health care providers employed by the Commonwealth. Indeed, his distress about the medical care he received led present counsel to file a separate malpractice action against three physicians and Pennsylvania Institution Health Services Inc.[2]

The medical malpractice claims, and therefore civil no. 93-1317, ended February 2, 1996, when this court entered summary judgment in favor of all the health care providers. This action was taken without opposition from the plaintiff.

There remains the slip and fall claim and defendant Commonwealth has now moved for summary judgment, Rule 1035.2, Pa.R.C.P. The gist of the Commonwealth's position is that the allegata of plaintiff's pleadings are insufficient to state a claim under the real estate and sidewalk exception of the Sovereign Immunity Act, 42 Pa.C.S. §8522(b)(4) (1978).

Plaintiff has filed an answer to the motion that contains new matter. Attached to this pleading is a copy of an architect's report dated February 29, 1996, in which the architect, Mr. Lawrence L. Dinoff A.I.A., concluded that "[T]he failure to install roof drains and planting beds, and the failure to safely slope the site in the area of O'Neill's accident did not comply with reasonable standards for safe facilities." Therefore, petitioner asserts that it was improper construction of the facility that caused ice and snow to accumulate on the walkway. This proof, it is argued, is sufficient to state

---

2. The second lawsuit emanating from Mr. O'Neill's accident was filed July 14, 1993, to no. 93-1317 and was captioned *Robert O'Neill v. Frederick Jones M.D., Huntingdon Bone and Joint Surgery Inc., Ronald Long M.D., Hayden, Long and Acker, Charles Reiners M.D., and Pennsylvania Institution Health Services Inc.*

a claim under the exception and precludes summary judgment.

A bit more of the procedural history is appropriate to focus squarely on the issue.

During a pretrial conference this summer, we became aware that an amended complaint was apparently the document counsel was working with in preparation for trial. We searched the record and could find no such pleading, and we wrote to counsel on July 18, 1996, advising them that such a pleading had never been filed with the prothonotary.[3] Petitioner's counsel responded by filing the amended complaint on July 24, 1996. The Commonwealth did not oppose this action.

In this amended complaint, the following specifics of negligence are set forth concerning Mr. O'Neill's fall:

"(23) Defendant, Department of Corrections of the Commonwealth of Pennsylvania, was negligent in the following respects:

"(a) it failed to clear the ice and snow accumulation on the walkway from cellblock "F" leading to the chow hall when it knew and had plenty of time to know, discover and remove the dangerous condition;

"(b) the defendant had actual, constructive and written notice of the dangerous condition and undertook

---

3. This snafu is another example of the confusion that flowed from the decision of counsel in both civil actions to consolidate the two cases and to file all documents to 92-2052. We previously commented on the subject matter of confusion in a memorandum and order filed May 18, 1995. In that order we denied petitioner leave to file an amended complaint. We thought then that this was a first amended complaint. We now realize that it was a second amended complaint.

the duty to clear some of the walkways but not the one in question;

"(c) the defendant failed to transfer plaintiff to a location closer to the chow hall to avoid his required traverse of a long, icy and dangerous walkway;

"(d) defendant failed to take adequate precautions for the safety of its inmates, including the plaintiff;

"(e) defendant failed to give the plaintiff an alternative route and take special precautions for his safety in light of his limitations from required use of a prosthetic devise and ongoing healing from prior surgery and injury;

"(f) defendant failed to inspect its premises and require its employees and inmates under its control to properly remove and clear dangerous conditions such as ice and snow debris from forming hills and ridges on the walkway before allowing inmates, including plaintiff, to traverse, thereby creating a dangerous condition of the real estate.

"(g) The defendant improperly abused its custodial responsibility and forced plaintiff to traverse a dangerous condition when it knew or should have known that he was likely to fall and injure himself;

"(h) In the alternative, defendant is strictly liable to the plaintiff for the dangerous condition of its premises because of its exclusive custody and control over the movement of plaintiff, a prisoner a Smithfield Correctional Institute at the time of the accident; . . . ."

The issue is whether the allegations of the complaint and the amended complaint state a cognizable cause of action.

## DISCUSSION

As noted, respondent's argument is premised on the pleadings and is therefore like a Rule 1034, Pa.R.C.P.

motion for judgment on the pleadings. The late Justice James T. McDermott discussed the similarities between a summary judgment motion and a motion for judgment on the pleadings in *Bensalem Township School District v. Commonwealth*, 518 Pa. 581, 544 A.2d 1318 (1988), and observed that *"a Rule 1034 motion for judgment on the pleadings can be used as a motion to test whether such a cause of action as pleaded exists at law . . .* The issue in such a cause is not whether the facts support the action, but whether there is such an action under the law." *Id.* at 586-87, 544 A.2d at 1321. (emphasis added) The standard is the same as that used in judging the efficacy of a demurrer, and it is that standard which we have attempted to follow in reaching our judgment in this cause.

The fuss in the case has been engendered by the Supreme Court of Pennsylvania decision in *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), which is the definitive explication of what is necessary in order to state a claim under the real estate and sidewalk exception to the Sovereign Immunity Act and its counterpart, the Political Subdivision Tort Claims Act.

Justice, now Chief Justice, Flaherty reviewed prior decisions of the court interpreting the real estate and sidewalk exception to governmental immunity, and he opined for the majority that:

"The common theme of all of these cases is that liability depends, first, on the legal determination that an injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous.

"What is necessary, therefore, to pierce the Commonwealth agency's immunity is proof of a defect of the sidewalk itself. Such proof might include an im-

properly designed sidewalk, an improperly constructed sidewalk, or a badly maintained, deteriorating, crumbling sidewalk. Here, however, we have no such allegation or proof." *Finn, supra* at 605, 664 A.2d at 1346.

The decision of the court was not a departure from prior decisions, and the language Justice Flaherty employed was taken directly from the opinion in *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989), where Mr. Justice Zappala wrote about the real property exception as follows: "The unambiguous language of section 8522(b)(4) in relevant part provides '[a] dangerous condition of Commonwealth agency real estate . . . .' *These key words indicate that a dangerous condition must derive, originate from or have as its source the Commonwealth realty." Id.* at 433, 562 A.2d at 311. (emphasis added) (footnote omitted)

A recent application of the principle clarified in *Finn* is helpful. The Commonwealth Court of Pennsylvania considered the following facts in *McRae v. School District of Philadelphia,* 660 A.2d 209 (Pa. Commw. 1995):

"On January 23, 1987, at 6:30 p.m., appellant was injured when she fell on the sidewalk abutting the McMichael School. On December 22, 1988, appellant filed a civil complaint against the City of Philadelphia and the School District of Philadelphia alleging that one or the other entity negligently maintained the sidewalk causing her to fall on the ice when she came into contact with hills and ridges of ice and snow remaining on the sidewalk." *Id.,* 660 A.2d at 209.

Although the opinion of the Supreme Court had not yet been announced in *Finn,* the court applied its own ruling in *Finn v. City of Philadelphia,* 165 Pa. Commw. 255, 645 A.2d 320 (1994), and concluded:

"In order for the real property exception to the Political Subdivision Tort Claim Act to apply, *it is in-*

*cumbent upon the pleading party to assert that there was an actual defect or flaw in the real estate itself that caused the injury, not some substance such as ice, snow, grease or debris on the real property, that facilitated the injury, unless it is there because of a design or construction defect. Shedrick v. William Penn School District, 654 A.2d 163 (Pa. Commw. 1995). The absence of such an allegation precludes a viable cause of action in the common pleas court." McRae, supra, 660 A.2d at 210.* (emphasis added) (footnote omitted)

This application draws the grease from the goose as the pleadings in this case allege no more than the allegations in *McRae,* and the fact that today petitioner has evidence to support a theory of a construction defect is irrelevant to the question before us, which is the sufficiency of the pleadings.

Our conclusion, therefore, is that the allegata are inadequate to state a claim. Further, we are persuaded that our prior decision refusing amendment was correct, since defective construction is a new theory of liability for which the statute of limitations has run. See *Bendas v. Township of White Deer,* 131 Pa. Commw. 138, 569 A.2d 1000 (1990), *affirmed,* 531 Pa. 180, 611 A.2d 1184 (1992). It is, therefore, appropriate that the motion for summary judgment be granted.

An order consistent with these views will be entered.

## ORDER

And now, September 16, 1996, it is the order of this court that respondent's motion for summary judgment is granted.