**Maureen MURPHY and Paul Murphy, her husband**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANS-PORTATION, Appellant.**

**Maureen Murphy and Paul Murphy, her husband, Appellants,**

v.

**Commonwealth of Pennsylvania, Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued May 17, 1999.
Decided July 1, 1999.

James P. Kearney, Scranton, for appellant.

Gerard W. Langan, Jr., Pittston, for appellee.

Before McGINLEY, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Before the Court are consolidated appeals from two separate orders of the Court of Common Pleas of Luzerne County (trial court) concerning preliminary objections in the nature of a demurrer filed on behalf of the Department of Transportation (DOT) to a personal injury lawsuit filed against it by Maureen Murphy and Paul Murphy, her husband (the Murphys). The Murphys appeal from the trial court's September 17, 1998 order that sustained DOT's preliminary objections and dismissed their complaint.[1]

However, on November 5, 1998, the trial court granted the Murphys' motion for reconsideration, reversed its September 17, 1998 order, and overruled DOT's preliminary objections. On November 17, 1998, DOT filed an application for amendment of the trial court's interlocutory order. The same day, the trial court granted DOT's application and amended its November 5, 1998 order to include the required language for an interlocutory appeal by permission. On December 30, 1998, this Court granted DOT permission to appeal.[2]

## I.

Because the Murphys timely appealed from the September 17, 1998 order, we do not believe that the trial court had jurisdiction over this matter at the time it entered its November 5, 1998 order. Pursuant to Pa. R.A.P. 1701(a), once an appeal is taken, a trial court may no longer act in the matter, subject to the exceptions in Pa. R.A.P. 1701(b), which provides in relevant part:

**(b) Authority of a trial court or agency after appeal.** After an appeal is taken or review of quasijudicial order is sought, the trial court or other government unit may:

. . . .

(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:

(i) an application for reconsideration of the order is filed in the trial court or other government unit within the time provided or prescribed by law: and

(ii) an order expressly granting reconsideration of such prior order is filed in the trial court or other government unit *within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such order,* or within any shorter time provided or prescribed by law for the granting of reconsideration. (Emphasis added).

We believe that the trial court's September 17, 1998 order, which sustained DOT's preliminary objections and dismissed the Murphys' complaint, was a final appealable order under Pa. R.A.P. 341. Moreover, because the Murphys' motion for reconsideration of the September 17, 1998 order was not granted until November 5, 1998, well after the expiration of the 30-day appeal period from the September 17, 1998 order, it is therefore nullified as untimely. Pa. R.A.P. 1701(b)(3)(ii). In view of the foregoing, having determined that the trial court's November 5, 1998 order is null and void, we therefore quash DOT's appeal and reinstate the trial court's September 17, 1998 order sustaining DOT's preliminary objections.

## II.

Turning to the merits of the Murphys' appeal, we note that this case arose out of an April 8, 1996 automobile accident. On that date, Maureen Murphy, while operating her automobile on Center Street in Hughestown, a state road under DOT's jurisdiction, swerved to miss a discarded muffler that was lying in the roadway and

1. The Murphys' appeal was transferred from the Superior Court to this Court and docketed at 404 C.D.1999.

2. DOT's appeal was docketed at 3190 C.D. 1998.

lost control of her vehicle. She collided with the curb on the right side of the roadway and then was forced back across the roadway where her vehicle struck a tree, which resulted in her being injured.

The Murphys subsequently filed a negligence action against DOT, seeking damages for Maureen Murphy's injuries and Paul Murphy's loss of consortium. In Count I, Paragraph 8 of their complaint, the Murphys allege that DOT was guilty of negligence, recklessness or carelessness, for the following reasons:

(a) failing to keep the roadway clear of debris;

(b) failing to exercise care, custody and control of Center Street by keeping the roadway free of debris, including used mufflers;

(c) failing to warn operators of motor vehicles, including the Plaintiff, Maureen Murphy, of the existence of obstructions in the state thoroughfare;

(d) failing to remove the muffler from the roadway despite acts or constructive notice of its presence.

Murphys' Complaint, p. 2. The Murphys then allege in Count I, Paragraph 9, that as a direct and approximate result of the above-mentioned negligence, recklessness and carelessness on behalf of DOT, Maureen Murphy sustained severe and permanent injuries. *Id.*, p. 3.

In response to the Murphys' complaint, DOT filed preliminary objections in the nature of a demurrer alleging that an object lying on a state highway does not fall within any of the exceptions to sovereign immunity set forth in Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522, and, therefore, that the Murphys failed to state a sustainable cause of action.

The trial court, in its September 17, 1998 order, initially sustained DOT's preliminary objections[3] on the ground that "the alleged dangerous condition, i.e., the discarded muffler on the highway, did not derive, originate from, or have as its source the property (highway) in question. The dangerous condition was on the highway and not part of the physical condition of the highway itself." Trial Court's September 17, 1998 Opinion, p.4.

As noted by the Murphys in their brief, in order to recover from DOT under the facts of this case, they must state a claim that falls within the real estate exception to sovereign immunity found in 42 Pa.C.S. § 8522(b)(4), which provides:

**(b) Acts which may impose liability.—** The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

**(4) Commonwealth real estate, highways and sidewalks.—**A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Com-

---

**3.** Upon the Murphys' motion for reconsideration, the trial court relied on the Supreme Court's decision in *Kilgore v. City of Philadelphia*, 553 Pa. 22, 717 A.2d 514 (1998), where the Supreme Court, in interpreting the real estate exception to local government immunity set forth in Section 8542(b)(3) of the Judicial Code, 42 Pa.C.S. § 8542(b)(3), held that the City's alleged failure to remove ice and snow following a storm was related to the "care, custody and control of real property in possession of the local agency" within the meaning of 42 Pa.C.S. § 8542(b)(3) and that "the question of whether a dangerous condi-

tion exists on real property in possession of a local government is a question of fact for the jury." *Kilgore*, 553 Pa. at 29, 717 A.2d at 517. Relying on *Kilgore*, the trial court reversed its earlier order sustaining DOT's preliminary objections and entered the November 5, 1998 order overruling said objections. However, as discussed above, the November 5, 1998 order was not timely granted during the 30–day appeal period from the trial court's September 17, 1998 order as required by Pa. R.A.P. 1701(b)(3) and was, therefore, a nullity.

monwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) [potholes, sinkholes and other similar dangerous conditions created by natural elements].

The Murphys argue that DOT has a statutory duty to maintain and repair all roads and highways under its jurisdiction. The Murphys cite *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), which quoting *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), stated that the "duty of care a Commonwealth agency owes to those using its real estate, (sic) is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Bendas*, 531 Pa. at 183, 611 A.2d at 1186 (quoting *Snyder*, 522 Pa. at 435, 562 A.2d at 312).

The Commonwealth, however, maintains that the Supreme Court requires that a dangerous condition, for purposes of the real estate exception, be a dangerous condition "of" rather than "on" the real estate. To support its position, the Commonwealth cites *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), where the Supreme Court held that a buildup of oil and grease on a City of Philadelphia sidewalk was not a defect "of" the sidewalk. In *Finn*, the Court reasoned:

> What is necessary, therefore, to pierce the Commonwealth agency's immunity is proof of a defect of the sidewalk itself. Such proof might include an improperly designed sidewalk, an improperly constructed sidewalk, or a badly maintained, deteriorated, crumbling sidewalk. Here, however, we have no such allegation or proof. We have a perfectly designed and constructed sidewalk, undamaged, upon which an unidentified individual or individuals deposited a foreign substance which caused appellant's injury. In the terms of *Snyder, supra*, the dangerous condi-

tion did not derive, originate from or have as its source the sidewalk.

*Finn*, 541 Pa. at 605, 664 A.2d at 1346.

Although *Finn* involved the real estate exception to local government immunity, the Court, citing *Snyder*, also recognized that for the real estate exception to sovereign immunity in 42 Pa.C.S. § 8522(b)(4) to apply, the artificial condition or defect of the land itself must cause the injury.

The Murphys, however, cite this Court's decision in *Fidanza v. Department of Transportation*, 655 A.2d 1076 (Pa. Cmwlth.), *petitions for allowance of appeal denied*, 542 Pa. 677, 668 A.2d 1138 (1995), for the proposition that material deposited "on" a highway may constitute a dangerous condition of Commonwealth real estate within the meaning of the real estate exception in 42 Pa.C.S. § 8522(b)(4). *Fidanza*, however, is factually distinguishable from the case at bar. In that case, the appellants alleged that DOT's failure to ensure proper shoulders, install guardrails and remove debris from the side of the road constituted a dangerous condition. In *Fidanza*, unlike the instant case, the appellants alleged that DOT was negligent in failing to provide a shoulder, failing to properly design and construct the shoulder, failing to install guardrails, failing to make repairs which would make the roadway safe, and depositing used highway materials adjacent to the traveled portion of the roadway. Clearly, the appellants in *Fidanza* alleged defects that were "of" the highway itself. In fact, the Court in *Fidanza* cited *Snyder* for the rule that in order for the real estate exception to be applicable, "the dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Fidanza*, 655 A.2d at 1080. In the case at bar, the Murphys did not allege any dangerous condition originating from the roadway. Hence, their reliance on *Fidanza* is misplaced.

Moreover, regarding the real estate exception to sovereign immunity, the Commonwealth cites, *inter alia, Abella v. City*

*of Philadelphia,* 703 A.2d 547 (Pa.Cmwlth. 1997), where this Court upheld the "of" the real estate requirement despite the Supreme Court's decision in *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997), which held that under the real estate exception to local government immunity,[4] a local government may be held liable for a foreign substance "on" the property that made the property dangerous.[5] In rejecting the appellant's argument that *Grieff* should apply as well to the real estate exception to sovereign immunity, the Court in *Abella* reasoned:

> Nevertheless, there has not been a definitive ruling by the Supreme Court that the "of"/"on" distinction, at least with respect to sovereign immunity or the sidewalk exception to governmental immunity has been displaced. *Indeed, Abella's speculation in this regard is particularly inappropriate where the Court in Grieff distinguished Finn as it did and emphasized the "broad[er]" particular language of the real property exception to governmental immunity. As the Commonwealth points out, Grieff was a plurality decision and certainly did not expressly question Finn or any other case. Abella's reliance in this case on Grieff is also unwarranted because there was no discussion there of sovereign immunity, as there was in Finn,* and the circumstances here, involving sovereign immunity and the accumulation of ice and snow on a sidewalk, are otherwise more akin to those in *Finn* than to those in *Grieff.*

703 A.2d at 550–551 (emphasis added).

However, subsequent to this Court's decision in *Abella,* the Supreme Court decided *Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514 (1998), which the trial court relied upon in its November 5, 1998

order to reverse its previous order and overrule DOT's preliminary objections. In *Kilgore,* the victim was injured when the driver of a motorized tug attached to a cargo dolly at the Philadelphia airport lost control of the tug due to an accumulation of ice and snow. The tug then struck and injured the victim, Walter Kilgore. In their complaint, the Kilgores alleged that the City was negligent in that it breached its obligation to remove snow and ice from the roadway area.

The Supreme Court agreed with the Kilgores and reasoned that the City's alleged failure to remove ice and snow from an earlier storm was related to the "care, custody and control of real property" in the City's possession within the meaning of the real estate exception to local government immunity set forth in 42 Pa.C.S. § 8542(b)(3). Citing *Bendas,* the Court stated that it "has consistently held that the question of whether a dangerous condition exists on real property in possession of a local government is a question of fact for the jury." *Kilgore,* 553 Pa. at 29, 717 A.2d at 517.

In case *sub judice,* the Murphys claim that *Kilgore* fits squarely on point. We disagree. Although *Kilgore* does away with the "on/of" test for determining whether snow and ice may constitute a dangerous condition for purposes of the real estate exception for local government immunity, like the Supreme Court's rationale in *Grieff,* it relies upon the "care, custody and control" language, which is found in the real estate exception to government immunity but not in the real estate exception to sovereign immunity.

Consequently, as previously noted by this Court in *Abella,* there still has not been a definitive ruling by the Supreme

**4.** Section 8542(b)(3) of the Judicial Code, 42 Pa.C.S. § 8542(b)(3), provides that liability may be imposed upon a local agency for any negligent act of the agency or its employees regarding: "The care, custody or control of real property in the possession of the local agency...."

**5.** In *Grieff,* the appellant was injured when a fire chief poured paint thinner on the floor to remove paint and the paint.thinner then ignited due to a spark from the refrigerator and burned the appellant.

Court discarding the "of/on" distinction for sovereign immunity. In fact, as noted by the Supreme Court in *Grieff,* the language "care custody and control" subjects a municipality to broader liability than the language "a dangerous condition." *See Grieff,* 548 Pa. at 17 n. 3, 693 A.2d at 197 n. 3. In view of the Supreme Court's lack of discussion of sovereign immunity in *Kilgore* and its noted distinction in *Grieff* regarding the difference in the scope of liability between "care, custody and control" and "a dangerous condition," we find our rationale in *Abella* to be equally applicable in the instant case.

■ Accordingly, we believe that the Supreme Court's rationale in *Snyder* and *Finn* is still applicable to the real estate exception to sovereign immunity and that the dangerous condition must be "of" the real estate, i.e., derive, originate from or have as its source the real estate.[6] In the instant case, the Murphys did not allege that the discarded muffler was a defect "of" the real estate. As a result, this Court affirms the trial court's initial order, dated September 17, 1998, sustaining DOT's preliminary objections.

### *ORDER*

AND NOW, this 1ˢᵗ day of July, 1999, for the reasons stated in the foregoing opinion, the Department of Transportation's appeal from the November 5, 1998 order and November 17, 1998 amended order of the Common Pleas Court, docketed here at 3190 C.D.1998 is quashed as being null and void.

It is further ordered, based upon the reasons stated in the foregoing opinion, that the Common Pleas Court's September 17, 1998 order sustaining the Department of Transportation's preliminary objections is reinstated and hereby affirmed. The

---

6. Recently, in *Tallada v. East Stroudsburg University of Pennsylvania,* 724 A.2d 427 (Pa. Cmwlth.1999), this Court affirmed the trial court's determination that a state university was immune from liability under the doctrine of sovereign immunity where the appellant

Murphys' appeal from said order, docketed here at 404 C.D.1999, is denied.

had alleged an injury resulting from a fall due to a dangerous condition on the real estate, i.e, liquid on the floor due to a leaking kettle, rather than a dangerous condition of the real estate.