Kymberly A. COHEN

v.

### CITY OF PHILADELPHIA and Frank Russo.

### Appeal of City of Philadelphia.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 13, 2004.

Decided April 23, 2004.

Alan C. Ostrow, Philadelphia, for appellant.

David Levenberg, Philadelphia, for appellees.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The City of Philadelphia (City) appeals from the December 11, 2002 order of the Court of Common Pleas of Philadelphia County (trial court) that denied its motion for summary judgment in an action brought by Kymberly A. Cohen (Cohen) for injuries she sustained when she slipped and fell on a sidewalk located on Third Street, near South Street, in the City.[1] We reverse.

On January 3, 2002, Cohen commenced a civil lawsuit against Frank Russo[2] and the City (collectively, Defendants) alleging

1. Although the trial court's order denying the City's motion for summary judgment is interlocutory, said orders may be appealed if the court of common pleas certifies that its order involves a controlling question of law on which there is substantial ground for a difference of opinion and an immediate appeal from the order would materially advance the ultimate termination of the matter. 42 Pa. C.S. § 702(b); Pa. R.A.P. 312. Where, as here, the court refuses to certify an interlocutory order, the party seeking to appeal must file a petition for review with the appropriate appellate court pursuant to Chapter 15 of the Rules of Appellate Procedure. *Commonwealth v. Boyle,* 516 Pa. 105, 532 A.2d 306 (1987). "The purpose of a Petition for Review in such cases is to test the discretion of the trial court in refusing to certify its order for purposes of appeal. *Id.* at 110, 532 A.2d

at 308. "[I]f review is granted by the appellate court and it determines that the trial court abused its discretion, the appeal will then proceed on the merits." *Id.* By order dated February 3, 2003, we granted the City's petition for review. Where the petition for review is granted, the effect is the same as if a petition for permission to appeal had been filed and granted. Pa. R.A.P. 1311 (Official Note); 1 G. Ronald Darlington, *et al.* Pennsylvania Appellate Practice, § 1311:6 (2nd ed.1997).

2. Russo failed to file an appearance before the trial court or defend the action in any other manner. Upon Cohen's motion, the trial court entered a default judgment against Russo.

that on February 24, 2001, while traversing the sidewalk of 252–254 South Street, she slipped and fell. Cohen averred that Defendants' negligence in the maintenance of the sidewalk caused dangerous and defective conditions of broken pavement and an unreasonable accumulation of hills, ridges and ruts of ice. She further alleged that as a result of Defendants' negligence, she sustained serious and permanent injuries.

The City filed an answer to Cohen's complaint and set forth the affirmative defense of governmental immunity under Sections 8541–8564 of the Judicial Code (Code), 42 Pa.C.S. § 8541–8564, commonly referred to as the Political Subdivisions Tort Claims Act (Tort Claims Act). The City further maintained that if there were any dangerous or hazardous conditions of the sidewalk, those conditions existed solely due to Russo's negligence.

The matter proceeded through the normal course of litigation, and on September 26, 2002, the City filed a motion for summary judgment. The trial court denied the City's motion, as well as the City's motion for reconsideration. On December 31, 2002, the City filed the instant appeal. In its opinion in support of its order, the trial court found that a genuine issue of material fact exists as to whether the City had actual knowledge of the allegedly dangerous condition of the sidewalk and that therefore, it was not clear whether the City was entitled to summary judgment. Additionally, the trial court concluded that the accumulation of snow and ice constituted a dangerous condition of the sidewalk as a defect in its maintenance.

■ The sole issue raised on appeal is whether the trial court erred by failing to determine as a matter of law that the accumulation of snow and ice on a sidewalk does not fall within the sidewalks exception to governmental immunity. Our review of a denial of a motion for summary judgment is limited to determining whether there was an error of law or an abuse of discretion. *Tackett v. Pine Richland Sch. Dist.*, 793 A.2d 1022 (Pa.Cmwlth.2002).[3]

■ Sections 8541–8564 of the Code provide that liability may be imposed against a local agency if two conditions are satisfied and if the injury occurs as a result of one of eight enumerated acts. The threshold requirements are that (1) the damages would be otherwise recoverable under common law or by statute creating a cause of action against one not having an immunity defense and (2), the injury must be caused by the negligent act(s) of the local agency or its employees. *Kilgore v. City of Philadelphia*, 553 Pa. 22, 717 A.2d 514 (1998).

At issue in the present matter is the sidewalk exception found in Section 8542(b)(7), which provides as follows:

The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(7) *Sidewalks.*—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a

---

3. Summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Tackett*.

sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

42 Pa.C.S. § 8542(b)(7).

The City directs our attention to *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), where the Supreme Court interpreted the sidewalk exception to governmental immunity to apply only in those instances where evidence could demonstrate that the injuries complained of resulted from a dangerous condition "of" the sidewalk. Further, the City relies on our decision in *McRae v. Sch. Dist. of Philadelphia*, 660 A.2d 209 (Pa.Cmwlth.1995), for the proposition that the accumulation of snow and ice on sidewalks is not an artificial condition or defect of the land and that, therefore, liability does not attach where no design or construction flaw is pleaded.

In contrast, Cohen maintains that (1) the testimony of City police officer Bernadette McCafferty established that the City had actual knowledge of the allegedly dangerous condition; (2) the City remains secondarily liable; (3) the Supreme Court effectively overruled *Finn* in *Kilgore;* and (4) the accumulation of snow and ice became attached to the sidewalk, not unlike broken pavement, creating a defective and dangerous condition of the sidewalk.

In *Jones v. Southeastern Pennsylvania Transp. Auth.*, 565 Pa. 211, 772 A.2d 435 (2001), Crystal Jones filed a complaint against the Southeastern Pennsylvania Transportation Authority (SEPTA) alleging that she sustained injuries as a result of SEPTA's negligence when she slipped and fell on rock salt that was laying "on" a train platform. SEPTA ultimately filed a motion for summary judgment, which was granted by the trial court and affirmed by this Court.

After reviewing the law regarding sovereign immunity, the Supreme Court addressed the "on/off" distinction that emerged from its decision in *Finn*, after which numerous cases held that immunity was waived only where injuries were caused by dangerous conditions "of" the location at issue. In other words, *Finn* was interpreted to mean that allegations of a substance or object "on" the location were insufficient to overcome governmental immunity.

In *Jones* the Supreme Court rejected the "on/off" distinction, concluding that it was problematic and of little or no use. Rather, the Court returned to its prior holding in *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989). In *Snyder*, the Court held that a claim for damages for injuries caused by a substance or an object on Commonwealth real estate must allege that the dangerous condition "derived[d], originate[d] or ha[d] as its source" the Commonwealth realty itself. *Jones* at 225, 772 A.2d at 443.

Although the issue in *Jones* centered on an interpretation of the streets exception found in Section 8522(b)(4) of the Code, 42 Pa.C.S. § 8522(b)(4) (providing for exception to immunity for actions involving Commonwealth real estate, highways and sidewalks), the Court specifically noted that its holding was consistent with its decisions in *Kilgore, Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997) and *Finn. Finn*, like the present matter, involved the sidewalk exception of Section 8542(b)(7); *Kilgore* and *Grieff* involved the real estate

exception found in Section 8542(b)(3), 42 Pa.C.S. § 8542(b)(3).

In *Jones*, the Supreme Court stated:

Our decision in this case and our decision in *Finn* are entirely consistent. Here, as there, we focus on the "dangerous condition of" phrase that the statutory exceptions in the Sovereign Immunity [42 Pa.C.S. § 8521–8528] and Tort [Claims] Acts share respectively, and are guided by *Snyder's* teaching. Thus, *Finn's* essential holding that application of 42 Pa.C.S. § 8542(b)(7) depends on the "legal determination that an injury was caused by a condition of the government realty itself deriving, originating from, or having the realty as its source[,"] is identical to our present holding. This is as it should be, since the material words the General Assembly used in the Sovereign Immunity Act's real estate exception mirror the material words it used in the Tort Claims Act's sidewalk exception.

Moreover, our interpretation of 42 Pa. C.S. § 8522(b)(4) does not conflict with *Kilgore's* and *Grieff's* interpretation of the Tort Claims Act's real estate exception. As aptly noted in those cases, the language of the legislature chose for subjecting the Commonwealth to liability under 42 Pa.C.S. § 8544(b)(4)—"a dangerous condition of Commonwealth agency real estate"—varies markedly from the language it chose for subjecting a local agency to liability under 42 Pa.C.S. § 8542(b)(3)—the "care, custody or control of real property...." Because the words the General Assembly used in the Sovereign Immunity Act are one way and the words it used in the Tort Claims Act are another, we are of the view that the legislature did not intend that § 8422(b)(4) and § 8542(b)(3) be interpreted in lockstep.

565 Pa. at 226, 772 A.2d at 444 (citations omitted).

As in *Jones*, the pertinent phrase in the case *sub judice* is "dangerous condition of" the sidewalk, not the "care, custody or control" language found in Section 8542(b)(3). Thus, pursuant to the Supreme Court's holding in *Jones*, the relevant inquiry is whether Cohen's injury occurred as a result of "a condition of the government realty itself deriving, originating from, or having the realty as its source." *Id.*

In her complaint, Cohen avers that Defendants were negligent in the following manner:

(a) In failing to properly maintain the sidewalks, walkways and/or areaway surrounding and adjacent to the aforementioned property and allowing severe and dangerous obstructions, depressions, an unreasonable accumulation of hills, ridges and ruts of ice and snow together with black ice, irregularities, defects and other dangerous conditions to exist thereon for a long and unreasonable length of time prior to the aforesaid date;

(b) In failing to properly and adequately inspect the sidewalks, walkways and/or areaways and failing to give notice of the obstructions, depressions, irregularities, unreasonable accumulation of hills, ridges and ruts of ice and snow together with black ice, defects and defective conditions thereon to the plaintiff and others lawfully upon the premises;

(c) In failing to perform or properly maintain the sidewalks, walkways, areaways and/or thoroughfares in a reasonably safe condition for public travel thereon;

(d) In failing to correct defects, irregularities, depressions, obstructions, unreasonable accumulation of hills, ridges and ruts of ice and snow together with

black ice and dangerous and defective conditions which were known or should have been known to [Defendants] to exist upon a reasonable inspection of the aforesaid property;

(e) [Cohen] reserves the right to rely on the Doctrine of "res ipsa loquitur" and "exclusive control" in that this is not the type of defect, negligence and/or accident that could occur in the absence of negligence upon [Defendants];

(f) In failing to provide adequate illumination of the aforesaid areaway and sidewalk to alert [Cohen] to the inherently dangerous nature of the aforesaid defective conditions;

(g) In being otherwise careless, reckless and negligent under the circumstances.

Cohen Complaint at ¶ 4(a-g)

The complaint generally avers that the accumulation of hills, ridges and ruts of ice constituted a "defective and dangerous condition"; however, there are no averments that the accumulation of hills, ridges and ruts of ice derived, originated from or had as its source the realty itself. Moreover, Cohen testified that the ice and snow caused her to fall. During Cohen's deposition, the following exchange occurred:

Q [Counsel for the City]. Okay. So then what's the next thing that happened. . . .

A [Cohen]. There was a door that I passed, and I slipped. My right foot tripped, and then my right foot slipped out from under me as I tried to get my balance, and then I put my right hand down to brace the fall and cracked down on my hand and my arm and instantly it was in pain.

Q. You said your right foot tripped. How did that happen?

A. There was ice. I was walking, and I tripped on something. I didn't see what I tripped on because there were long shadows that were over the top of the sidewalk. They went from about where the cellar grate was to the end where the curb was, and I was on the sidewalk walking towards the car.

When I turned around after I fell, I saw that I actually fell on the ice. I didn't see the ice before I went down because it was dark.

. . . .

Q. Now, on the night that you fell, are you able to say where the ice began on the sidewalk?

A. Am I able to say where it began?

Q. Yes, do you remember?

A. No, I didn't even know that there was ice until I turned after I fell on my wrist, and I looked up and saw that there [were] hills, ridges and ruts of— and like two to three inches of snow. Only when I actually looked to see what I fell on. I had no idea of that because, as you could see. . . .

. . . .

Q. Okay. So just going back to the mechanics of the accident, you said your right foot tripped. And then after you fell, you looked back and saw you had tripped on a hill and ridge of snow and ice?

A. Right. Actually, to clarify, my right foot tripped and then I tried to get my balance with my left foot. The left foot is actually what went out underneath me. And then I used my hand to break the fall.

Q. But your testimony is that it was a hill and ridge of ice or snow—

A. Right. With treads.

Q. Okay. Let me finish my question. Your testimony is that it was a hill and ridge of ice and snow that caused [your] right foot to trip?

A. Correct.

---

Q. And then your left foot slipped on the ice?

A. Correct.

Cohen's June 5, 2002 deposition, pp. 33–34, 37, 41.

Cohen's testimony is that the snow and ice on the sidewalk caused her to trip and fall. No where in her deposition does she claim that some other condition of the sidewalk, deriving, originating from or having its source as the sidewalk, caused her to lose her balance and fall. Accordingly, we must conclude that the trial court erred in failing to find that Cohen's claim does not satisfy the requirements of Section 8542(b)(7) of the Code and that the City is immune from suit.

Further, we conclude that the trial court's reliance on *Young v. United States of Amer.*, 2002 WL 31340706 (E.D.Pa. 2002), an unpublished federal district court opinion, is misplaced. In *Young*, a motorist was injured as he rounded a curve on Sackettsford Road, Northampton Township, and swerved to miss a postal truck that was stopped on the road in front of him. As he swerved, he collided with a cement mixer going in the opposite direction.

In his complaint against the township, the motorist alleged that the township was negligent in its care, control and custody of the real property by its failure to prune vegetation to allow drivers adequate sight lines, thus creating a dangerous condition of the roadway. Because the motorist's claims fell under the real property exception in Section 8542(b)(3) of the Code, the operative language was the "care, custody and control" of local agency property, which includes allegations of improper maintenance. Thus, the township was not entitled to summary judgment. Allegations that the township was negligent under Section 8542(b)(4) of the Code, 42 Pa. C.S. § 8542(b)(4) (pertaining to the care, control, and custody of trees, traffic controls and street lighting), were likewise properly pleaded where the motorist alleged that the township failed to properly trim trees in its right of way and that the township had notice that the trees impeded a motorist's sight line.

In *Young*, the motorist raised claims under those sections of the Sovereign Immunity Act that abrogate immunity where it is alleged that the Commonwealth's "care, custody, or control" of the realty caused a dangerous condition leading to the motorist's injuries. In this case, again, the relevant inquiry is whether the allegedly dangerous condition derived from, originated or had its source as the local agency's realty. *Jones.* Because Cohen has not sufficiently plead that the snow and ice accumulations did not derive, originate from or have the realty as their source, she has failed to satisfy the requirements of Section 8542(b)(7).[4]

---

4. Cohen's arguments that the City had notice of the allegedly dangerous condition, that the hills and ridges were attached to the sidewalk and that the City remains secondarily liable are without merit. Before the issue of notice arises, a party must demonstrate that his claim falls within one of the enumerated exceptions to immunity. *See generally Kiley by Kiley v. City of Philadelphia*, 537 Pa. 502, 508, 645 A.2d 184, 187 (1994) (appellants' argument that City's actual or constructive knowledge of a barricaded sidewalk which caused pedestrians to walk in the street, thus creating a dangerous condition of the sidewalk, was not supported by any exception to the immunity statute). Additionally, Cohen did not plead that the construction of or some other defect in the sidewalk caused the snow and ice to accumulate. Furthermore, the City remains secondarily liable only in those where it has the authority to require installation and repairs of sidewalks under the care, custody and control of others. Cohen has likewise failed to plead that the City failed to enforce any ordinance requiring the property owner to maintain the sidewalk.

Accordingly, we reverse the order of the trial court.

### ORDER

AND NOW, this 23rd day of April, 2004, the December 11, 2002 order of the Court of Common Pleas of Philadelphia is RE-VERSED.