Morewood Point Community Association, Appellant,
v.
The Port Authority of Allegheny County and BWC Development, Inc., Brandimarti Builders, Inc. and Unknown Engineers
v.
BWC Development, Inc., Brandimarti Builders, Inc., and Unknown Engineers
No. 701 C.D. 2009.
Commonwealth Court of Pennsylvania.
Argued: December 7, 2009.
April 8, 2010.
Filed: January 28, 2010.
BEFORE: JUBELIRER, Judge, LEAVITT, Judge, QUIGLEY, Senior Judge.

ORDER
PER CURIAM.
NOW, April 8, 2010, it is ordered that the above-captioned Memorandum Opinion, filed January 28, 2010, shall be designated OPINION and shall be REPORTED.
OPINION BY JUDGE COHN JUBELIRER
Morewood Point Community Association (the Association) appeals from an order of the Court of Common Pleas of Allegheny County (trial court), which denied the Association's Motion for Post-Trial Relief (Motion) requesting judgment notwithstanding the verdict (judgment NOV).[1] The Association, as the owner of adjacent land, brought a negligence action against the Port Authority of Allegheny County (Port Authority) seeking monetary damages and injunctive relief for damages resulting from a landslide. Following the trial, the jury returned a verdict in favor of the Port Authority. In this case, we are asked to consider whether a landowner is negligent, as a matter of law, where it has notice of earth movement/sliding on its property that may threaten the stability of adjoining land, but fails to prevent further earth movement/sliding.
The Port Authority owns and operates the Martin Luther King, Jr. East Busway (Busway) in the City of Pittsburgh. The Port Authority also owns the hillside that runs adjacent to a portion of the Busway and is adjacent to property owned by the Association. It is on this hillside that the earth movement/sliding occurred. The Port Authority purchased the land for the Busway, including the adjacent hillside, from Conrail in 1978 or 1979 (Trial Ct. Hr'g Tr. at 213, R.R. at 213a), and the Port Authority opened the Busway in 1983. (Trial Ct. Op. at 1.) To construct the Busway, the Port Authority had to cut into a small portion of the base of the hillside. (Trial Ct. Hr'g Tr. at 225-28, 253, R.R. at 225a-28a, 253a.) The hillside, which is covered by trees and other vegetation, slopes upward from the Busway approximately 70 feet and is bordered by chain link fencing at the top and bottom. (Trial Ct. Op. at 1.) Except for performing minor tree trimming work, the Port Authority has performed no work on the hillside since the Busway opened. (Trial Ct. Op. at 1.)
In the late 1980s and early 1990s, BWC Development, Inc. (Developer) and Brandimarti Builders (Builder) developed and constructed a planned community of condominiums, known as Morewood Point, adjacent to the top edge of the hillside. (Trial Ct. Op. at 2; Trial Ct. Hr'g Tr. at 53, R.R. at 53a.) Several of the condominiums in Morewood Point are located near the edge of the hillside and are separated from the hillside only by the common areas running behind those units. (Sketch 1 of Report of GAI Consultants, Ex. D of Complaint, R.R. at 379a.) As evidenced by aerial photographs and engineering studies, additional fill was added to the Port Authority-owned hillside by Developer and/or Builder sometime after the Busway opened, but before Morewood Point was completed. (Trial Ct. Op. at 2; Trial Ct. Hr'g Tr. at 54-55, 262-63, R.R. at 54a-55a, 262a-63a.)
In early June of 2005, the Association, which is composed of Morewood Point condominium owners, discovered signs of earth movement/sliding in the common areas immediately adjacent to the hillside owned by the Port Authority. (Trial Ct. Op. at 2; Letter from Edward F. Zehfuss, President of Arnheim & Neely, Inc., Managing Agent of the Association, to John Ehmer, of the Port Authority (June 8, 2005), Association's Ex. 2, R.R. at 500a.) The Association notified the Port Authority of the situation and asked it to investigate. (Joint Stipulations ¶¶ 1-2, R.R. at 351a-52a.) The Port Authority investigated the situation (Joint Stipulations ¶ 2, R.R. at 351a-52a), and its in-house civil engineer opined that the earth movement/sliding was caused by a sinkhole. (Trial Ct. Op. at 2; Inspection Report of D.A. Cook at 1-2, Association's Ex. 10, R.R. at 511a-12a.)
Although the Port Authority initially agreed to share its engineering findings, it subsequently refused to provide them to the Association. (Joint Stipulations ¶¶ 3-4, R.R. at 351a-52a.) The Association sent the Port Authority numerous letters requesting the engineering findings and asking that it remedy the situation, but the Port Authority refused to produce the documents and took no steps to remedy the situation. (Joint Stipulations ¶ 5, R.R. at 351a-52a; see, e.g., Letter from Fred C. Jug, Jr., Counsel for the Association, to Arthur E. Hussey, Jr., P.E., Manager of Real Estate Services for the Port Authority (July 5, 2005), Association's Ex. 8, R.R. at 508a.)
In April of 2006, the Association filed its Complaint with the trial court, averring that: the earth movement/sliding originated on the Port Authority's property due to the Port Authority's cutting away part of the hillside and use of fill on the hillside during the construction of the Busway; and that the Port Authority had a duty to correct the dangerous condition on its property. (Complaint ¶ 29, R.R. at 360a.) The Association further claimed that the Port Authority breached its duty and caused the Association to suffer damages. (Complaint ¶¶ 29, 32, R.R. at 360a-61a.) The Association sought the following relief: judgment against the Port Authority for monetary damages exceeding $25,000.00; an injunction requiring the Port Authority to produce all of its engineering studies and related documents; and an injunction granting the Association a construction easement to repair the hillside. (See Count I of Complaint, R.R. at 362a; Complaint at ¶¶ B-D, R.R. at 364a.) After the Association filed the Complaint, the Port Authority provided a copy of its engineering findings to the Association. (Joint Stipulations ¶ 5, R.R. at 351a-52a.)
The Association subsequently filed an Amended Complaint in which it alleged that further property damage occurred as the result of a May 2, 2006 landside. (Amended Complaint ¶¶ 45, 47, R.R. at 416a-17a.) The Association claimed that the Port Authority owed a duty to provide lateral support to the Association's property and owed a duty to prevent further damages where the Port Authority was or should have been aware that a dangerous condition existed on its own property. (Amended Complaint ¶ 48, R.R. at 417a.) The Association further alleged that the Port Authority breached these duties. (Amended Complaint ¶ 49, R.R. at 417a.)
The Port Authority filed an Answer and New Matter denying that it was negligent and raising several affirmative defenses, including sovereign immunity under the act commonly referred to as the Sovereign Immunity Act, 42 Pa. C.S. §§ 8521-8528. (Answer and New Matter at 1-12, R.R. at 422a-33a.) The Port Authority also filed a Counterclaim asserting that the Association, or its predecessors in interest, had caused the landslide and the resulting damage to the Port Authority's property because they: converted the Port Authority's property; trespassed on the Port Authority's property; and committed negligence by constructing a fence on the Port Authority's property and by substantially increasing the area and composition of the hillside when it deposited additional fill during the development and construction of Morewood Point. (Counterclaim at 13-18, R.R. at 434a-39a.)
The Association filed a Second Amended Complaint joining Developer, Builder, and unknown engineers as additional defendants and alleging that they were negligent. (Second Amended Complaint at 4-14, R.R. at 449a-59a.) The Association obtained default judgments against these additional defendants. (Trial Ct. Op. at 3.) The Association filed a Motion for Partial Summary Judgment as to the Port Authority's Counterclaim, and the trial court denied that motion by order dated December 18, 2007. (Trial Ct. Docket at 6; R.R. at 345a.) However, after the Association filed a Motion for Reconsideration, the trial court revisited the Counterclaim and dismissed it by order dated January 29, 2008. (Trial Ct. Docket at 5, R.R. at 344a.)
The matter proceeded to trial solely on the Association's negligence claim against the Port Authority. At the conclusion of the trial, the jury returned a verdict in favor of the Port Authority. Thereafter, the Association filed its Motion requesting judgment NOV. According to the Association, it was entitled to judgment NOV because the Port Authority was negligent as a matter of law where the undisputed facts of record showed that it had notice of a dangerous condition of its property, but failed to remedy such condition. (Motion ¶¶ 2, 6-8, R.R. at 478a-79a.) By order dated March 10, 2009, the trial court denied the Association's Motion for judgment NOV. The Association now appeals from the trial court's order.[2]
Judgment NOV "may be entered on two bases: where the movant is entitled to judgment as a matter of law, and/or where the evidence is such that no two reasonable persons could disagree the verdict should have been rendered for the movant." Commonwealth v. U.S. Mineral Prods. Co., 927 A.2d 717, 723 (Pa. Cmwlth. 2007), aff'd, 598 Pa. 331, 956 A.2d 967 (2008). With regard to "the first basis, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in movant's favor." Id. With regard to "the second basis, the court reviews the evidentiary record and concludes the evidence is such that verdict for the movant is beyond peradventure." Id.
On appeal, the Association argues that the trial court erred in denying it judgment NOV because the undisputed record evidence establishes that the Port Authority had notice of a dangerous condition of its property, but failed to correct such dangerous condition and, therefore, was negligent as a matter of law. According to the Association, in its negligence action before the trial court, it asserted that the Port Authority was liable for both: (1) removing lateral support; and (2) failing to remedy a known dangerous condition of the Port Authority's own property. The Association asserts that the latter conduct constitutes a separate claim of negligence under the real estate exception to sovereign immunity, as set forth in Section 8522(b)(4) of the Sovereign Immunity Act.[3] The Association believes that, in denying it judgment NOV, the trial court incorrectly relied solely on cases addressing the removal of lateral support, such as Beal v. Reading Co., 370 Pa. 45, 87 A.2d 214 (1952). The Association argues that, in light of its second allegation of negligence, the trial court should have also considered cases involving the exceptions to sovereign or governmental immunity, such as Department of Transportation v. Patton, 546 Pa. 562, 686 A.2d 1302 (1997). Furthermore, the Association argues that the Port Authority should not be permitted to escape liability by asserting that other individuals or entities were responsible for placing fill on the hillside because this does not change the fact that the Port Authority had notice of a dangerous condition of its property, but failed to remedy such dangerous condition.
However, as the Port Authority correctly argues, and the trial court correctly explained, Section 8522 of the Sovereign Immunity Act does not create separate theories of negligence; it merely sets forth the situations where the General Assembly has waived the defense of sovereign immunity that is otherwise available to Commonwealth agencies, such as the Port Authority. Subsection (a) of Section 8522 provides that:
The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa. C.S. § 8522(a) (emphasis added). Pursuant to Section 8522(a), in order to recover against a Commonwealth agency, a plaintiff must establish: (1) that damages would be recoverable for negligence under a common law theory of negligence or based on statute against a person not having available the defense of sovereign immunity; and (2) that the requirements for one of the exceptions to sovereign immunity set forth in subsection (b) have been satisfied. Mannella v. Port Authority of Allegheny County, 982 A.2d 130, 132 (Pa. Cmwlth. 2009). Here, the Association specifically relies on the real estate exception to sovereign immunity in subsection (b)(4), which provides, in relevant part:
(b) Acts which may impose liability.  The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
. . . .
(4) Commonwealth real estate, highways, and sidewalks.  A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency. . . .
42 Pa. C.S. § 8522(b)(4). There is no dispute that the earth movement/sliding on the Port Authority's property was a dangerous condition of Commonwealth agency real estate. Thus, the Association did establish that the requirements of subsection (b)(4), set forth above, were satisfied. However, we conclude that the Association failed to establish that damages would be recoverable for negligence based on a common law theory of negligence or based on a statute creating a cause of action had the injury been caused by a non-governmental party.
In Beal, our Supreme Court held that a landowner incurs no liability for failing to provide lateral support to his neighbor's property "so long as he does nothing to change the contour of his own property" which causes the withdrawal or removal of lateral support. Id. at 51-53, 87 A.2d at 217-18. Here, the evidence establishes that the Port Authority did change the contour of its property by cutting into a small portion of the hillside in order to construct the Busway. (Trial Ct. Hr'g Tr. at 225-28, 253, R.R. at 225a-28a, 253a.) However, this occurred long before the subsequent earth movement/sliding first discovered in June of 2005. Thus, we conclude that the causal relationship between the Port Authority's cutting into the hillside and the subsequent earth movement/sliding, which led to the loss of lateral support to the Association's adjoining land, was not obvious.
This conclusion is supported by the Association's own expert, Jack Murray, P.E., who opined that "the origin of this landslide is probably the water  ground water effect  and it has to be either at the boundary or on the Port Authority" property and did not testify that the landslide was the result of any work the Port Authority performed on the hillside. (Trial Ct. Hr'g Tr. at 49, R.R. at 49a.) Mr. Murray also did not indicate that the Port Authority contributed in any way to the groundwater effect that caused the landslide. Finally, Mr. Murray acknowledged that landslides are not uncommon in Allegheny County and are often caused by erosion. (Trial Ct. Hr'g Tr. at 93-94, R.R. at 93a-94a.) The Port Authority's expert, Tom Leech, P.E., did not believe that the Port Authority's actions in cutting into the hillside to construct the Busway played a role in destabilizing the hillside because the cut was made into solid rock mass, as opposed to loose dirt or fill. (Trial Ct. Hr'g Tr. at 254, R.R. at 254a.) Mr. Leech ultimately opined that the placement of fill at the top of the hillside and fluctuations in ground water contributed to the instability of the hillside and resulted in the landslide.[4] (Trial Ct. Hr'g Tr. at 271, R.R. at 271.) Because the record evidence does not establish that the Port Authority did anything to cause the earth movement/sliding, which led to the loss of lateral support to the Association's land, the Association failed to prove that the Port Authority was negligent at common law. Therefore, the Association was not entitled to recover damages under Section 8522, and, contrary to the Association's argument, the Port Authority was not negligent as a matter of law.
Although the Association maintains that the trial court erred in relying solely on cases involving the removal of lateral support, rather than considering and relying on cases addressing the exceptions to sovereign or governmental immunity, we disagree that the trial court erred. The Association's contention is based on its faulty premise that subsection (b)(4) of Section 8522 creates a separate cause of action through which negligence may be proven simply by the showing that a Commonwealth agency failed to remedy a known dangerous condition of its property. None of the cases the Association relies upon support that premise. In fact, in Patton, our Supreme Court recognized that, in order to recover against a Commonwealth agency under Section 8522, the plaintiff had to establish, under the facts and circumstances of that case, that damages were recoverable at common law or based on statute creating a cause of action if the injury were caused by a non-government party. Id. at 566, 686 A.2d at 1304. The Supreme Court further recognized that, at common law, in order to recover for an injury caused by a defect in a highway, the plaintiff needed to establish that the defendant had notice of the defect. Id. (citing Good v. City of Philadelphia, 335 Pa. 13, 16, 6 A.2d 101, 102 (1939)). Moreover, while the Supreme Court, in Patton, limited its inquiry to the issue of notice, it did so because the only issue presented on appeal pertained to notice. Id. at 565, 686 A.2d at 1304. Thus, as the trial court here astutely explained, Patton does not stand for the proposition that the failure to remedy a dangerous condition of property after receiving notice of such dangerous condition is always sufficient, by itself, to establish liability.
As explained above, the harm alleged here pertains to lateral support of the Association's adjoining land. The Association goes to great lengths to persuade the Court that there is a basis for negligence separate and apart from this claim; however, this simply cannot be done. To accept the Association's position that the Port Authority should be held liable for negligence because it failed to remedy the earth movement/sliding on its property, even though such earth movement/sliding was not caused by the Port Authority, would mean that we would be placing an affirmative duty on the Port Authority to supply lateral support to the Association's land. Our Supreme Court rejected such a proposition in Beal, stating that a landowner "is under no duty affirmatively to supply lateral support." Id. at 51, 87 A.2d at 217 (emphasis in original). Therefore, we conclude that the trial court did not err in relying on cases involving the removal of lateral support.[5]
Furthermore, while the Association argues that the Port Authority should not be permitted to escape liability by arguing that it did not place the fill on the hillside, we disagree. This argument is based on the already rejected premise that subsection (b)(4) of Section 8522 creates a separate cause of action through which negligence may be established. Beal requires that the Association prove, as it alleged, that the Port Authority took some action which caused the earth movement/sliding that removed lateral support to the Association's land. Id. at 51-53, 87 A.2d at 217-18. The Association cites to no authority, nor are we aware of any, which precludes the Port Authority from asserting that some other entity or individual took action that caused the earth movement/sliding on the hillside as a defense against the Association's claim of negligence. Accordingly, we reject the Association's argument.
Ultimately, we agree with the Port Authority that the trial court did not err in denying the Association's Motion requesting judgment NOV. Accordingly, the trial court's order is affirmed.

ORDER
NOW, January 28, 2010, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter, which denied Morewood Point Community Association's Motion for Post-Trial Relief requesting judgment notwithstanding the verdict, is hereby AFFIRMED.
NOTES
[1] In its Motion, the Association requested alternative relief in the form of a new trial, which was also denied by the trial court. The Association does not contest the trial court's denial of its request for a new trial in its Statement of Matters Complained of on Appeal or in its brief.
[2] This Court's review of a denial of judgment NOV "is limited to a determination of whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case." Snyder v. North Allegheny School District, 722 A.2d 239, 242 n.9 (Pa. Cmwlth. 1998). Moreover, in conducting such review, this Court is required to view the evidence in the light which is most favorable to the party prevailing below and give such party every logical inference. Id.
[3] The Association also contends that the Port Authority was subject to liability for negligence under the real estate exception to governmental immunity found at Section 8542(b)(3) of the act commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. § 8542(b)(3). However, the Pennsylvania Supreme Court has previously determined that the Port Authority is a Commonwealth agency subject to the Sovereign Immunity Act, and not a local agency subject to the Tort Claims Act. Marshall v. Port Authority of Allegheny County, 524 Pa. 1, 3-6, 568 A.2d 931, 932-34 (1990).
[4] Mr. Leech testified that between 20 and 30 feet of fill was placed on the hillside in 1960, prior to the Port Authority acquiring the property, and that an additional 5 feet of fill was placed at the top of the hillside during the development and construction of Morewood Point. (Trial Ct. Hr'g Tr. at 250, 260, 262-63, 270, R.R. at 250a, 260a, 262a-63a, 270a.) Although Mr. Murray disagreed as to the particular amounts of fill that were placed on the hillside and to the timing involved, he agreed that a significant amount of fill was placed on the hillside prior to the Port Authority acquiring the property and that Developer and/or Builder placed additional fill at the top of the hillside during the development and construction of Morewood Point. (Trial Ct. Hr'g Tr. at 53-55, 91, R.R. at 53a-55a, 91a.)
[5] The Association also cites to Finn v. City of Philadelphia, 541 Pa. 596, 664 A.2d 1342 (1995), Cohen v. City of Philadelphia, 847 A.2d 778 (Pa. Cmwlth. 2004), and Trenco, Inc. v. Department of Transportation, 560 A.2d 285 (Pa. Cmwlth. 1989). However, the Association's reliance on these cases is misplaced. While these cases address the requirements for meeting some of the exceptions to sovereign or governmental immunity and explain that a dangerous condition must derive from the government property itself, they are distinguishable. None of these cases involved a situation, like here, where a defect in real property caused harm to adjacent land. Instead, the cases relied on by the Association all involved situations where an unremedied dangerous condition of real property caused harm to other individuals or their personal property either on or off of the government real property. See Finn, 541 Pa. at 598-99, 664 A.2d at 1343 (appellant slipped on grease-covered sidewalk adjacent to Commonwealth real property); Cohen, 847 A.2d 779-80 (appellant slipped on icy sidewalk owned by the City of Philadelphia); Trenco, 560 A.2d at 286 (slate and mud from landslide fell on appellant's vehicles). Therefore, these cases do not support the Association's entitlement to judgment NOV.