**Le–NATURE'S, INC., Appellant**

v.

**LATROBE MUNICIPAL AUTHORITY and City of Latrobe.**

Commonwealth Court of Pennsylvania.

Argued May 9, 2006.

Decided Dec. 28, 2006.

Michael E. DeMatt, Greensburg, for appellant.

Dwayne E. Ross, Latrobe, for appellee, City of Latrobe.

Dennis J. Stofko, Johnstown, for appellee, Latrobe Municipal Authority.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Le–Nature's, Inc. (Le–Nature) appeals from the decision of the Court of Common Pleas of Westmoreland County (trial court) which sustained the preliminary objections filed by Latrobe Municipal Authority (Authority) and the City of Latrobe (City)(collectively, Latrobe) and dismissed Le–Nature's complaint. We affirm.

Le–Nature is a Delaware corporation with its principal place of business at 11 Lloyd Avenue, Latrobe, Westmoreland County. In 2003, Le–Nature was planning

a construction project at its principal place of business. In July of 2003, Le–Nature hired TEDCO Construction (TEDCO) to be the general contractor for the project. TEDCO subsequently contracted with Shelly Drilling Company (Shelly) to drill and place caissons for the project. On July 16, 2003, TEDCO called Pennsylvania One Call (One Call) to determine whether there were any utility lines located where Shelly was scheduled to drill.[1] Latrobe did not respond to the One Call request. Shelly proceeded with the drilling on October 3, 2003 and struck and damaged a sewer line owned and/or operated by Latrobe.

On January 26, 2004, Le–Nature filed a writ of summons. On December 20, 2004, Le–Nature filed a complaint against Latrobe. Le–Nature contends in its complaint that TEDCO and Shelly were required under the One Call statute to determine whether any utility or other lines or facilities were located in the area of the project prior to any excavation and that Latrobe was required under the One Call statute to provide One Call with the location of all of their utility lines and other facilities and to respond in a timely manner to a request made pursuant to the One Call statute.

Authority thereafter filed preliminary objections to the complaint. Le–Nature amended the complaint on January 27, 2005. In its amended complaint, Le–Nature seeks damages in the amount of $1,030,255.35 against Latrobe due to its failure to respond to TEDCO's One Call request resulting in damage to the sewer line owned and operated by Latrobe and causing significant delays in Le–Nature's construction project. Le–Nature alleges that Latrobe was negligent and that Latrobe breached an implied contract in failing to perform the duties imposed on it by the One Call statute and such was the direct and proximate cause of the damages.

On February 1, 2005, Latrobe filed preliminary objections to the amended complaint. Latrobe contends that Le–Nature failed to set forth a breach of duty that Latrobe owed to Le–Nature and also raised governmental immunity.

On March 23, 2005, the trial court sustained Latrobe's preliminary objections and dismissed Le–Nature's amended complaint. The trial court determined that the One Call statute only establishes a duty between a contractor and the facility owners who own or operate the underground lines and that no duty is owed to an owner. The One Call statute defines a "contractor" as "any person who or which performs excavation or demolition work for himself or for another person." 73 P.S. § 176. The term "facility owner" is defined under the Act as "the public utility or agency, political subdivision, municipality, authority, rural electric cooperative or other person or entity who or which owns or operates a line. . . ." 73 P.S. § 176. "Owner" is defined under the Act as "any person who or which engages a contractor for construction or any other project which requires excavation or demolition work as herein defined." 73 P.S. § 176. Therefore, the trial court determined that Latrobe did not owe a duty to Le–Nature because Le–Nature was not a contractor but an owner under the One Call statute.

1. The One Call system is defined in what is commonly known as the Pennsylvania One Call statute (One Call statute or Act), Section 1 of the Act of December 10, 1974, P.L. 852, *as amended,* 73 P.S. § 176, as a "communication system established within this Commonwealth to provide a single toll-free telephone number for contractors or designers or any other person covered by this act to call facility owners and notify them of their intent to perform excavation, demolition or similar work as defined by this act. . . ."

Le–Nature timely appealed to the Superior Court, which subsequently transferred the matter to our Court.[2]

Before our Court, Le–Nature contends that the trial court erred in sustaining Latrobe's preliminary objections and dismissing its amended complaint. Le–Nature contends that Latrobe owes it a duty of care and that the duty arose when it created a foreseeable risk of harm by failing to respond to all notices and mark its underground lines.[3]

In proving negligence, LeNature must show that there was a duty that was breached, that there was a causal connection between the breach of duty and the harm suffered, and that Le–Nature suffered actual harm. *R.W. v. Manzek*, 838 A.2d 801 (Pa.Super.2003). The first two prongs, i.e. duty and causal connection, are the only negligence issue before us.

The One Call statute created a duty which is owed by facility owners. Section 2 of the One Call statute states in pertinent part as follows:

It shall be the duty of each facility owner:

. . .

(5) Not more than two working days after receipt of a timely request therefore from a contractor or operator who identifies the site of excavation or demolition work he intends to perform:

(i) To mark, stake, locate or otherwise provide the position of the facility owner's underground lines at the site within eighteen inches horizontally from the outside wall of such line in a manner so as to enable the contractor, where appropriate, to employ prudent techniques, which may include hand-dug test holes, to determine the precise position of the underground facility owner's lines. This shall be done to the extent such information is available in the facility owner's records or by use of standard locating techniques other than excavation.

. . .

(v) To respond to *all notices* through a One Call System, provided the request is made in the time frame set forth under this act. (Emphasis added).

73 P.S. § 177(5)(i), (5)(v). In accordance with the above statute, the facility owner has a duty to respond to "all notices" received through the One Call system and to mark its lines within two working days after receiving the call. However, Latrobe contends and the trial court found that Latrobe did not owe a duty to Le–Nature, as facility owners do not owe owners a duty under the One Call statute. We disagree.

Under Section 1 of the One Call statute, the purpose of the "One Call System" is defined to provide a telephone number for contractors or designers "or any other person covered by this act." 73

---

**2.** We note that the Superior Court transferred this appeal to us with a cite to our original jurisdiction. Given that the trial court sustained preliminary objections and dismissed the case and that the Superior Court did not void the trial court's order of dismissal, we have proceeded with this case as an appeal.

**3.** In determining whether the trial court properly sustained the preliminary objections, we must determine the sufficiency of the facts that were averred by examining the averments in the complaint along with the documents and exhibits attached thereto. We must determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. We will reverse the trial court's decision only where there has been an error of law or an abuse of discretion and we will sustain the preliminary objections only where the case is free and clear of doubt. *Brosovic v. Nationwide Mutual Insurance Co.*, 841 A.2d 1071 (Pa.Super.2004).

P.S. § 176. By expressly providing for "any other person" covered by the Act besides a contractor, the Act obviously was not intended to be limited to protecting only contractors and designers but also was intended to cover the other party necessarily involved in the excavation or demolition work associated with the project, the owner. Further, an owner could also have the same intent to do such work in the area of underground utilities without even using a contractor. Following the logic of Latrobe's argument, an owner doing such work without a contractor who had one of its employees make the "One Call," would not be covered by the statute unless it hired a contractor, architect, engineer or other designer to make the call for it. A statute will not be construed to obtain an absurd result. *Colpetzer v. Workers' Compensation Appeal Board (Standard Steel)*, 802 A.2d 1233 (Pa. Cmwlth.2002). Although contractors or designers may usually be engaged in such work, an owner making the "One Call" and thereafter striking utility lines cannot be construed to be omitted from the same duty owed the contractor or designer by the facility owner but would be "any other person covered by this act."

In further support of owners being owed a duty, section 5 of the One Call statute provides in pertinent part as follows:

(12) The following standards shall be applied in determining whether a contractor shall incur any obligation or be subject to liability as a result of a contractor's demolition or excavation work damaging a facility owner's facilities:

(i) The contractor who has complied with the terms of this act and who was not otherwise negligent shall not be subject to liability or incur any obligation to facility owners, operators, **owners** or other persons who sustain injury to person or property as a result of the contractor's excavation or demolition work damaging a facility owner's lines. (Emphasis added).

73 P.S. § 180(12)(i). Section 5 further adds in pertinent part as follows:

(15) When the information required from the facility owner under clause (5)(i) of section 2 cannot be provided ... the contractor shall promptly notify the **owner** or the owner's representative.... (Emphasis added).

73 P.S. § 180(15).

■ An "owner" is owed a duty under this Act as a person who has an interest in the facility owner's response through the One Call system. The owner, Le–Nature, ultimately paid the contractor for fixing the facility owner's lines and all of the other damage that occurred as a result of the lines being damaged. Le–Nature was an intended beneficiary of the One Call statute as the owner, i.e. the person who engaged the contractor. Thus, a review of the One Call statute reveals that the "owner" is a person covered under this Act.

■ Latrobe nonetheless argues that Section 7.2(e) of the One Call statute expressly precludes a cause of action on behalf of an owner against a facility owner.[4] Section 7.2(e) of the One Call statute provides as follows:

(e) The provisions of this act shall not affect any civil remedies for personal injury or property damage, except as otherwise specifically provided for in this act.

73 P.S. § 182.2(e). After reviewing Section 7.2(e) of the One Call statute, we disagree with Latrobe that this statute specifically precludes an action by an own-

---

**4.** We note that Latrobe argues that it did not own or operate the sewer line at the time of the alleged incident. This is a question of fact that should be decided by the trial court.

er against a facility owner.[5] The One Call statute does not prohibit an owner from bringing an action against the facility owner. On the contrary, Section 7.2(e) appears to preserve all of Le–Nature's causes of action against the facility owner.

In this case, contrary to the trial court's determination, Le–Nature alleged sufficient facts in the Complaint to establish, if proven, that Latrobe had a duty to respond to the One Call request. Le–Nature also alleged facts establishing that Latrobe breached such duty when it failed to respond to the One Call request. Further, Le–Nature alleged facts establishing a causal connection between the breach and the harm suffered, as Shelly hit the sewer line due to the fact that Latrobe did not inform TEDCO that there was a line where TEDCO was working. Le–Nature also alleged facts establishing that it suffered actual harm due to Latrobe's failure to respond to the One Call request and Shelly then striking the line. As such, the allegations in the Complaint have established a negligence claim, if proven.

■ Latrobe contends that even if Le–Nature set forth a claim in negligence, it is immune from this claim because it is a political subdivision and subject to what is commonly called the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8541–8542. We agree.

The Tort Claims Act provides that a political subdivision shall not be immune for among other things:

A dangerous condition **of** the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish

that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. (emphasis added).

42 Pa.C.S. § 8542(b)(5). Therefore, Le–Nature must allege facts that establish a dangerous condition of the sewer system which created a foreseeable risk of harm after Latrobe had actual or constructive notice of it in time to protect against it. In its amended complaint Le–Nature alleges the following:

10. The City and Authority had a legal duty to safely design, maintain, and operated (sic) the sewer system and services, which included properly complying with the Pennsylvania One Call System, so as not to injure Le–Nature[']s, and its failure to do so created a dangerous condition.

11. The City and Authority had actual or constructive notice of its duty to comply with the Pennsylvania One Call in this particular matter, or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

Le–Nature Amended Complaint, January 27, 2005, Nos. 10–11, at 2. Le–Nature does not allege a dangerous condition of the sewer system, but merely an inaction

---

**5.** Latrobe also argues that TEDCO was contributorily negligent by violating the time frames of the One Call statute when it failed to contact One Call within ten days prior to beginning the excavation. TEDCO called One Call on July 16, 2003 but did not commence work until October 3, 2003. This is also a question of fact that would be determined by the trial court.

by Latrobe which created a dangerous condition generally.

 In *Dean v. Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000), our Court explained that the "lack of a guardrail does not render the highway unsafe for the purposes for which it was intended, i.e., travel on the roadway." *Id.,* at 512, 751 A.2d at 1135. Similarly, the failure of Latrobe to comply with the One Call statute is negligence *per se* but that alone, *per se,* does not render the sewer system dangerous or unsafe for the purposes for which it was intended. Although the question of what constitutes a dangerous condition is a question of fact for the jury, *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), the determination of whether an action is barred by sovereign immunity is entirely a matter of law. *Taylor v. Jackson*, 164 Pa.Cmwlth. 482, 643 A.2d 771 (1994). The relevant inquiry is whether the allegedly dangerous condition derived from, originated or had its source as the local agency's realty. *Jones.* Here, the dangerous condition was alleged to be derived from Latrobe's failure to comply with the One Call statute and the Contractor digging and hitting the sewer line. There was no allegation describing a dangerous condition of the sewer system itself but merely the contractor hitting the sewer line.

As Le–Nature failed to allege a dangerous condition of the sewer system, we find that the trial court did not err in sustaining Latrobe's preliminary objections. Accordingly, we must affirm the decision of the trial court on other grounds.

### ORDER

AND NOW, this 28th day of December, 2006 the order of the Court of Common Pleas of Westmoreland County, which sustained the preliminary objections filed by Latrobe Municipal Authority and the City of Latrobe and dismissed Le–Nature's complaint, is affirmed on other grounds.