Sherri A. FALOR, Appellant

v.

SOUTHWESTERN PENNSYLVANIA
WATER AUTHORITY.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 2014.

Decided Oct. 9, 2014.

Timothy N. Logan, Waynesburg, for appellant.

Pamela V. Collis, Pittsburgh, for appellee.

BEFORE: MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Sherri A. Falor appeals an order of the Court of Common Pleas of Greene County (trial court) granting summary judgment to the Southwestern Pennsylvania Water Authority on Falor's tort claim. Falor sought to hold the Water Authority liable for water damage to her commercial property that occurred when the pipes in her building burst in the winter. This would not have happened if the Water Authority had turned off water service to her building as it had agreed to do. The trial court held that Falor's claim was barred by governmental immunity, as provided by the statute commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542. We affirm.

## Factual and Procedural Background

The pertinent facts follow. Falor has owned a four-story commercial building located at 325 East High Street in Waynesburg, Pennsylvania since 1983. In 2010, Falor decided to sell the property and to shut off all utilities because the building was not occupied. In December 2010, Falor asked the Water Authority to shut off the water for her building. The Water Authority sent its employee, Patrick Knight, to shut off the water. He discovered that the tap connecting the water main to Falor's property also served another building next door. Deciding that shutting off Falor's water would also shut off the neighbor's water, Knight did nothing. No one from the Water Authority informed Falor of Knight's omission. However, it did not continue to bill her.

In the meantime, the gas company complied with Falor's request to shut off service, which left the building unheated. At some point during the winter of 2010–2011, the pipes in Falor's building froze and burst. As a result, thousands of gallons of water flooded the building, unbeknownst to Falor.

In February 2011, the Waynesburg Borough Manager told Falor that there was water running in the alley behind her building. Falor replied that the water was not coming from her building because the water had been shut off. In March 2011, the Water Authority informed Falor that the water had not been shut off to the building, and she investigated. She discovered substantial damage to the interior of the building as well as mold and mildew contamination.

Falor filed a civil action against the Water Authority to recover for the damage to

her building that is now uninhabitable. The Water Authority filed preliminary objections. Falor then filed an amended complaint. The amended complaint alleged that the Water Authority did not shut off the water or notify her that it chose not to do so. As a consequence, the water pipes burst inside the building and caused significant flooding. Amended Complaint, ¶ 16; Supplemental Reproduced Record at 005b (S.R.R. ——). The amended complaint asserted several theories: negligence, nuisance, trespass and strict liability. The Water Authority filed an answer and new matter denying liability and asserting the defense of governmental immunity under the Tort Claims Act.

After discovery, the Water Authority moved for summary judgment, asserting that it was immune from liability for its failure to shut off the water as requested. Falor responded with her own motion for summary judgment, asserting, *inter alia,* that the two-headed tap serving Falor's property was a "dangerous condition." The trial court rejected Falor's theory of liability and concluded that the harm was caused by the Water's Authority's failure to shut off the water and to inform Falor of that fact. Concluding the Water Authority was immune from liability for this omission, the trial court granted judgment to the Water Authority. The present appeal followed.[1]

### Issues

On appeal, Falor raises five issues for our consideration.[2] First, Falor argues that the trial court erred by holding that a dangerous condition did not exist when such determination is a finding of fact reserved for the jury. Second, Falor argues that the trial court erroneously concluded that an exception to governmental immunity did not apply. Third, Falor argues that the trial court erred in denying her claim in trespass. Fourth, Falor argues that the trial court erred in concluding that her claim in nuisance does not fall under an exception to governmental immunity. Fifth, Falor argues that the trial court erred in finding that the water supply line running to Falor's building was not an ultra hazardous condition, which imposed strict liability on the Water Authority. We address these issues *seriatim.*

### Applicable Principles of Law

The Tort Claims Act generally shields local agencies from tort liability for injuries caused by the agency or its employees.[3] Specifically, Section 8541 states as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S. § 8541. However, the legislature has provided limited exceptions to this grant of immunity. Section 8542(a) of the Tort Claims Act states that a local agency shall be liable for damages if: (1)

---

1. This appeal was transferred from Superior Court.

2. Our scope of review is *de novo,* and our standard of review is plenary. *Cochrane v. Kopko,* 975 A.2d 1203, 1205 (Pa.Cmwlth. 2009). A grant of summary judgment is appropriate where there are no genuine disputed material facts and it is clear that the moving party is entitled to judgment as a matter of law. *Farabaugh v. Pennsylvania Turnpike Commission,* 590 Pa. 46, 911 A.2d 1264, 1267 (2006).

3. The trial court determined that the Tort Claims Act applies to the Water Authority because it is a local agency within the meaning of the statute. Falor does not dispute this determination.

the damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available an immunity defense; (2) the injury was caused by the negligent acts of the local agency or its employee; and (3) the negligent acts fall within one of the enumerated exceptions to governmental immunity listed in Section 8542(b). 42 Pa.C.S. § 8542(a).[4]

Falor contends that this case falls within the utility service facilities exception to governmental immunity found in Section 8542(b)(5) of the Tort Claims Act, which makes a local agency liable for an injury caused by a dangerous condition of its utility service facilities located within a right-of-way. Section 8542(b)(5) states as follows:

> (b) Acts which may impose liability.— The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
>     \*    \*    \*
>
> (5) Utility service facilities.—*A dangerous condition of the facilities of* steam, sewer, *water*, gas or electric systems *owned by the local agency and located within rights-of-way*, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had

actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(5) (emphasis added). Notably, the exceptions to the immunity provision in the Judicial Code are to be narrowly construed. *Dean v. Department of Transportation*, 561 Pa. 503, 751 A.2d 1130, 1134 (2000).

## Dangerous Condition of Facility

    ▮ In her first issue, Falor argues that the trial court erred in holding that the two-headed tap serving Falor's property was not a dangerous condition of the water service facility because this was a question of fact for a jury to decide. It is generally true that the jury decides what constitutes a dangerous condition. Nevertheless, whether a claim is barred by sovereign immunity is a question of law. In that respect,

> [t]he relevant inquiry is whether the allegedly dangerous condition derived from, originated or had its source as the local agency's realty.

*Le–Nature's, Inc. v. Latrobe Municipal Authority*, 913 A.2d 988, 994 (Pa.Cmwlth. 2006). In conducting this inquiry, the trial

4. Section 8542(a) of the Tort Claims Act states as follows:

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. § 8542(a).

court must consider the facts as pleaded. *Id.* at 993–94.

Falor made the following allegations relevant to her claim for damages:

13. Upon information and belief, [the Water Authority] realized it could not shut off the water to Plaintiff's property because the neighboring property utilized the same hookup to the water main.

14. Without apprising Plaintiff, [the Water Authority] did not shut off the water to Plaintiff's property as requested by Plaintiff.

\* \* \*

38. [The Water Authority] was negligent in failing to comply with Plaintiff's request to shut off the water and breached its duty to apprise Plaintiff that it failed or was unable to comply with her request to shut off the water.

\* \* \*

41. [The Water Authority] is absolutely liable for failing to shut off its water supply from the water main to Plaintiff's property, and ... the continued provision of water to vacant property known not to have any source of heat or utilities, was a dangerous instrumentality.

Amended Complaint, ¶ 13, ¶ 14, ¶ 38, ¶ 41; S.R.R. 005b, 009b. The trial court held that Falor's amended complaint did not include any allegations that the tap connecting her property's water line to the water main was, in itself, a dangerous condition.[5]

In short, the facts, as pled, did not present a question of fact for a jury to resolve. The trial court decided the legal question of the Water Authority's immunity on the facts that were pleaded.

### Public Utility Exception to Governmental Immunity

■ Next, Falor argues that the trial court erred in holding that the utility service facilities exception to governmental immunity found at 42 Pa.C.S. § 8542(b)(5) did not apply because the two-headed tap was not itself a dangerous condition. Falor asserts that the utility exception does apply because the tap lies in the Water Authority's right-of-way, where "the dangerous condition was created." Falor's Brief at 17. Falor also contends that the Water Authority did not maintain its facilities because its employee refused to turn off the water, causing 500,000 gallons of water to run from the tap through Falor's building.

The fact that the problem originated with the Water Authority's tap does not, by itself, place this case within the utility service facilities exception to governmental immunity. Rather, it must be alleged that the local agency's real property "*itself* causes the injury, not merely [that] it facilitates the injury by the acts of others." *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342, 1345 (1995) (emphasis in original) (quoting *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118, 1124 (1987)).[6]

5. In her motion for summary judgment, Falor contended that "[t]he dangerous condition in the current matter arose where [the Water Authority] failed to turn off the tap. That tap is located within a right-of-way." Counter–Motion for Summary Judgment, $31; S.R.R. 090b.

6. In *Finn*, the Supreme Court, affirming this Court, held that the City was immune from

liability under the Tort Claims Act for injuries caused when a pedestrian slipped and fell due to a buildup of oil and grease on the City's sidewalk. The Court so held because there was no defect in the sidewalk itself; the problem was caused by a foreign substance on the sidewalk. Although *Finn* dealt with the sidewalk exception to governmental immunity found at 42 Pa.C.S. § 8542(b)(7), its general rationale is equally applicable to the utility

*Le–Nature's, Inc.,* 913 A.2d 988, is instructive. In that case, Le–Nature's, Inc. hired a contractor to perform drilling work for its construction project. The contractor contacted the Latrobe Municipal Authority and the City of Latrobe (collectively, Latrobe) under what is commonly referred to as the Pennsylvania One Call statute [7] to determine whether there were any utility lines present where the contractor intended to drill. Receiving no response, the contractor began drilling and struck and damaged a sewer line owned by Latrobe. Le–Nature's, Inc. sought damages for significant delays in the construction project caused by Latrobe's failure to respond to the contractor's inquiry. Latrobe filed preliminary objections raising, *inter alia*, the defense of governmental immunity under the Tort Claims Act. The trial court granted the preliminary objections and dismissed the complaint.

This Court affirmed. In doing so, we explained that to fit the utility service facilities exception to governmental immunity, Le–Nature's, Inc. had to "allege facts that establish a dangerous condition of the sewer system which created a foreseeable risk of harm after Latrobe had actual or constructive notice of it in time to protect against it." *Le–Nature's, Inc.,* 913 A.2d at 993. Le–Nature's, Inc. did "not allege a dangerous condition of the sewer system, but merely an inaction by Latrobe [*i.e.,* negligently failing to comply with the One Call statute] which created a dangerous condition generally … the contractor hitting the sewer line." *Id.* at 993–94. The sewer system itself was not dangerous or unsafe for its intended purpose.

This Court reached the same result in *Metropolitan Edison Company v. Reading Area Water Authority,* 937 A.2d 1173 (Pa.Cmwlth.2007). Met–Ed brought a negligence claim after Reading Water Authority employees struck and damaged a Met–Ed utility line while doing excavation work around the water line. The trial court granted summary judgment in Reading's favor on the basis of governmental immunity, and this Court affirmed. We rejected Met–Ed's argument that Reading's water line was dangerous because it was located too close to MetEd's utility line, explaining that "[c]learly, the dangerous condition, as alleged, originated with the conduct of Reading's employees." *Id.* at 1175. Thus, we concluded that Met–Ed's claim did not fall within the immunity exception found in 42 Pa.C.S. § 8542(b)(5).

The trial court relied on *Matarazzo v. Millers Mutual Group, Inc.,* 927 A.2d 689 (Pa.Cmwlth.2007) (*en banc*), which presented facts very similar to those presented in Falor's action. The Matarazzos asked their water company to shut off the water to their vacant property. A water company employee advised them that the water would be shut off and the Matarazzos received a final water bill. However, the water company did not actually shut off the water. During cold weather the Matarazzos' pipes burst, flooding and damaging the home.

The Matarazzos filed an action asserting a claim of detrimental reliance, also known as promissory estoppel, and the water company filed preliminary objections asserting the defense of immunity. This Court affirmed the trial court's decision to

---

service facilities exception. Falor's reliance on *Finn* in support of her argument is misplaced because she cites to and relies on the dissent authored by Justice Cappy rather than on the majority's rationale.

**7.** Act of December 10, 1974, P.L. 852, *as amended,* 73 P.S. §§ 176–186.

sustain the preliminary objections. We held that the Matarazzos' allegations could fairly be characterized as a tort claim and, as such, did "not fall within an exception to governmental immunity." *Id.* at 694.[8]

Le–Nature's, Inc., Metropolitan Edison Company and Matarazzo are dispositive. The Water Authority's tap functioned properly and delivered water to the property as intended. Rather, it was the Water Authority's negligent failure to shut off the water at the tap and to tell Falor of its decision that created a dangerous condition that resulted in harm to her property.

The Water Authority enjoys governmental immunity because Falor's claim does not fit within the utility service facilities exception. Therefore, the trial court did not err in granting the Water Authority's motion for summary judgment.

### Trespass and Nuisance

Falor argues that because the exception at 42 Pa.C.S. § 8542(b)(5) applies in the current litigation, remedies should be available for both her trespass action and nuisance action. Falor's trespass and nuisance claims are based on the Water Authority's failure to shut off the water, which does not fall within the utility service facilities exception to governmental immunity. Accordingly, she cannot recover damages from the Water Authority.

### Strict Liability

Finally, Falor argues that the trial court erred in concluding that the Water Au-

thority was not engaged in an ultra hazardous activity for which it may be held liable.

■ One who engages in an abnormally dangerous activity such as blasting or keeping wild animals will be held strictly liable for harm resulting from that activity even if "he has exercised the utmost care to prevent the harm." *Albig v. Municipal Authority of Westmoreland County,* 348 Pa.Super. 505, 502 A.2d 658, 662 (1985). In *Albig,* the municipal authority stored a large quantity of water in a reservoir situated on a hillside above residential properties. Due to subsidence caused by mining activities, water escaped from the reservoir and caused property damage. The Superior Court concluded that storing large quantities of water in the reservoir potentially could be an abnormally dangerous activity for which the municipal authority would be strictly liable. However, the Court held that because the value of the reservoir to the community outweighed its potentially dangerous qualities, storing water in the reservoir was not an abnormally dangerous activity and the municipal authority could be liable for property damage only if water escaped because of its negligence. Because the water escaped due to mining activities, the municipal authority was not liable for damage to the neighboring properties.

■ Citing *Albig,* the trial court rejected Falor's strict liability claim, concluding that if storing large amounts of water in a

8. The dissent would have overruled the water company's demurrer because the Matarazzos' complaint stated a claim for promissory estoppel, as expressly held by the trial court. *Matarazzo,* 927 A.2d at 695 (Leavitt, J., dissenting). Our Supreme Court has held that a claim for promissory estoppel against a local agency is not barred by governmental immunity. *Ervin v. City of Pittsburgh,* 339 Pa. 241, 14 A.2d 297, 301 (1940). The dissent also

disagreed that the water authority's duty of care to the Matarazzos arose from the social duty to all persons imposed by the common law. Rather, the water authority specifically assured its business customers, the Matarazzos, that it would turn off their water and they relied on that promise. Whether their reliance was reasonable was a factual question.

Falor does not assert a claim of promissory estoppel.

reservoir is not an abnormally dangerous activity, then the use of a double tap to connect Falor's building to the water main is not an ultra hazardous activity. Falor argues that the trial court erred in its interpretation of *Albig*. Falor asserts that the reservoir in *Albig* was not held abnormally dangerous because it was essential and beneficial to the community. By contrast, the Water Authority's tap and water line to her building do not benefit the community. The Water Authority could have handled Falor's water service without affecting the rest of the community. It engaged in an abnormally dangerous activity by continuing to run water to Falor's property when it knew the other utilities were being shut off.

The trial court held that normal delivery of water service to a property is not an abnormally dangerous activity that triggers strict liability. More importantly, the events in *Albig* pre-dated the Tort Claims Act, which the legislature enacted in 1980. The Tort Claims Act provides local agencies with immunity except for negligent acts that fall within one of the specifically enumerated exceptions found in Section 8542(b). A claim for damages caused by a utility service must fit within Section 8542(b)(5), and Falor's does not. Falor's strict liability claim, like all of her other claims, rests on the actions or inactions of the Water Authority and its employees, and must fail. We see no error in this analysis.

### Conclusion

For these reasons, we affirm the order of the trial court.

### *ORDER*

AND NOW, this 9th day of October, 2014, the order of the Court of Common Pleas of Greene County dated September 26, 2013, in the above captioned matter is hereby AFFIRMED.

